[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 553.]

IN THE MATTER OF THE TRUST U/W OF BROOKE ET AL., DECEASED.

[Cite as *In re Trust of Brooke*, 1998-Ohio-185.]

*Trusts—Language of charitable trusts where residents of the city of Eaton are beneficiaries, construed.*

(No. 97-1089—Submitted April 7, 1998—Decided August 12, 1998.)

APPEAL from the Court of Appeals for Preble County, No. CA96-10-017.

_____

{¶ 1} In 1942, two sisters, Mary G. Brooke and Edith L. Gould, executed their last wills and testaments. Under the terms of both wills, trusts were established, which became active in 1968, following the death of Harold Brooke Ressler, a relative of both sisters. Item 6, part 7 of the Brooke will provides:

"After the death of the survivor of said Harold Brooke Ressler and Edith L. Gould, my said Trustee shall, from time to time, in his sole discretion, but in no event at greater intervals than 20 year periods after the death of such survivor, give the net income from my entire trust estate to the Village of Eaton, Preble County, Ohio, for such Worthy Legal Municipal Purpose or Purposes as said Trustee may deem advisable and for something which will be of a substantial and permanent nature and be a benefit to said Village, and which gift shall be known as 'The Gould-Brooke Memorial' or some similar title which will tend to perpetuate the name of Gould and/or Brooke."

{¶ 2} The language of the Gould will is identical to that in the Brooke will, except that the name "Mary G. Brooke" replaces the name "Edith L. Gould." The trust appoints a trustee and provides that the president of the Eaton National Bank, Eaton, Ohio, shall serve as trustee following the death of the original appointee. The appellant, Jeffrey A. Maffett, is the third trustee appointed to administer the trusts since their inception.

**{¶ 3}** After the trusts became active, four distributions were made from the trusts. In 1973, two citizens organized a group to develop plans and raise funds for the construction of a new library in Eaton. The citizens sought financial support from the Brooke and Gould trusts, and the trustee at that time, Thurston F. Bittle, agreed to support the project with funds from the trust, if other funds could be secured with community contributions. Subsequently, the citizens sought the support of the residents of the city of Eaton and the Eaton City Council for the project.

**{¶ 4}** The city council supported the project by establishing a fund to deposit private contributions for the project, by submitting a joint application with the Preble County Board of Library Trustees for available federal funds, and by allowing the library to be built on city-owned land. In 1975, following the completion of the library and the naming of it as the "Brooke-Gould Memorial Library," funds from the trusts were distributed to support the project.

**{¶ 5}** A second distribution of funds from the trusts occurred in 1984 for the purpose of supporting an expansion to the library. The distribution was again conditioned on the receipt of other funds raised from the community. The most recent distributions were made for the purpose of supporting construction of a new emergency medical services facility, and for the construction of a new high school.

**{¶ 6}** In 1994, the current trustee, Maffett, filed an application with the Preble County Court of Common Pleas, Probate Division, to amend both trusts for the purposes of acquiring tax-exempt status under Section 501(c)(3) of the Internal Revenue Code and to "verify that there are no other beneficiaries of the Trust other than the City of Eaton, and to clarify the distribution provisions of the Trust." The trial court approved the amendments to the trusts, which provide, in pertinent part, as follows:

"1. *Distribution*. The Trustee shall, from time to time, distribute such part of the net income and/or principal of the Trust for such charitable and/or worthy

legal municipal purpose or purposes for the City of Eaton as the Trustee may deem advisable and appropriate in the Trustee's sole discretion. Particularly with respect to distributions of principal, the Trustee shall give emphasis to distributions that will result in something which will be of a substantial and permanent nature for the City of Eaton. * * * "

{¶ 7} The trial court also determined that the "ultimate 'beneficiaries' are the citizens of the 'Village' (now City) of Eaton."

{¶ 8} On November 16, 1994, just prior to the filing of the application for amendments to the trusts, the mayor of Eaton, on behalf of the city council, wrote the trustee, requesting his approval for a distribution of funds to construct a new municipal building for the city. The trustee responded in writing, noting that he would consider the request along with others under consideration. On February 14, 1995, after the approval of the trial court of the proposed amendments to the trusts, counsel for the city wrote to the trustee. The city again called for the trustee to distribute the trust funds to the city for the building project, claiming that the trustee's consideration of any other requests for trust funds would conflict with the terms of the trust. In response, counsel for the trustee stated that the "sole discretion" granted to the trustee by the terms of the trust did not require the trustee to distribute funds to the city simply by virtue of its request.

{¶ 9} The city, appellee, then filed a motion pursuant to Civ. R. 60(B) for relief from the order of the trial court amending the trusts. Following settlement discussions, the parties agreed to amend the trusts by merging them and providing as follows:

"1. *Distribution*. The Trustee shall, from time to time, in his sole discretion, but in no event at greater intervals than twenty year periods after the death of Harold Brooke Ressler (*i.e.* 1968), give the net income of the entire Brooke/Gould Trust to the City of Eaton, Preble County, Ohio, for such worthy legal municipal purpose or purposes as the Trustee may deem advisable and for something which will be of

a substantial and permanent nature and be a benefit to said City, which gift shall be known as 'The Brooke-Gould Memorial' or some similar title which will tend to perpetuate the name of Gould and/or Brooke. Notwithstanding the above, the Trustee shall make all distributions in compliance with all applicable laws and regulations, including but not limited to Section 4942 of the Internal Revenue Code of 1986 as amended ('Code') or any successor section of the Code and any regulations promulgated thereunder. Accordingly, the Brooke/Gould Trust is organized exclusively for charitable, religious, educational or scientific purposes, including for such purposes, the making of distributions to the City of Eaton, a governmental unit described in Section 170(b)(1)(A)(v) of the Code."

{¶ 10} The agreement did not determine the issue of who was intended to be the beneficiary of the trusts.

{¶ 11} Upon a subsequent motion requesting a declaration of the rights of the city under the trust, the trial court determined that "the City of Eaton * * * is *not* the 'sole beneficiary' under the Trusts * * *. [Emphasis *sic*.] Rather, the community of residents in the more broad or generic sense is/are the beneficiaries of the Trusts." The trial court added, "the word 'Village' means the community of residents. Had the Settlors intended to leave the income of the Trusts to the 'governmental entity' there would be no reason to grant the Trustee the authority to control the distribution of the income and determine proper purpose(s) for the use of that income."

{¶ 12} The trial court also found that the city was not the designee for creating and developing plans for uses of the income because the language of the trust expressly reserved that function to the trustee. Finally, the trial court denied the city's application for attorney fees.

{¶ 13} The city appealed to the Preble County Court of Appeals. The court of appeals reversed the judgment of the trial court. The court of appeals determined that the word "Village" as used in the trusts meant the "legal entity" of the

municipality and the residents of the city. The appellate court also determined that the city was the only entity intended to expend the trust income to fulfill any plans for uses of the trust.

{¶ 14} The cause is now before this court pursuant to the allowance of a discretionary appeal.

—————————

*Thompson, Hine & Flory L.L.P., Laurie J. Nicholson* and *Richard F. Carlile*, for appellant.

*Porter, Wright, Morris & Arthur* and *Jonathan Hollingsworth*, for appellee.

*Leppla & Ambrose Associates, Ltd.,* and *R. Mark Henry*, urging reversal for *amicus curiae*, Concerned Eaton Citizens.

—————————

**MOYER, C.J.**

{¶ 15} This dispute arises from a declaratory judgment action brought to construe certain language contained in two trusts of which the appellant is the trustee.[1] For the reasons that follow, we hold that the trusts grant exclusive power to the trustee to control and distribute the net income from the trust, subject to the requirements for distribution as stated in the trusts. We also hold that the words of the trusts indicate that the net income from the trusts is to be expended on behalf of the residents of Eaton, Ohio, for a use that the trustee, exclusively, determines to be a worthy legal municipal purpose, so long as that purpose is of a substantial and permanent nature, benefits the residents of Eaton, and perpetuates the name of the settlors in some way. Accordingly, we reverse the judgment of the court of appeals.

{¶ 16} When construing provisions of a trust, our primary duty is to "ascertain, within the bounds of the law, the intent of the * * * settlor." *Domo v.*

---

1. Unless otherwise stated, we refer to the language of the original trusts as established by the settlors throughout.

*McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706, 708. The express language of the trust guides the court in determining the intentions of the settlor. *Casey v. Gallagher* (1967), 11 Ohio St.2d 42, 40 O.O.2d 55, 227 N.E.2d 801. Any words used in the trust are presumed to be used according to their common, ordinary meaning. *Albright v. Albright* (1927), 116 Ohio St. 668, 157 N.E. 760.

{¶ 17} Applying those principles to the trusts at issue, it is evident that these trusts are charitable trusts. The language of the trusts indicates that the benefits of the trusts are "intangible advantages to the public or to some significant class thereof which improve its condition mentally, morally, physically, or in some similar manner." Bogert, Trusts & Trustees (2 Ed. Rev.1991) 19-20, Section 362. Additionally, it is clear that the money paid out of the trusts is "not for the personal benefit of the donees, but rather to secure for society certain advantages." *Id*. at 20. Indeed, no party disputes that Edith Gould and Mary Brooke clearly contemplated that the use of their trusts would inure to the public benefit.[2]

## POWERS OF THE TRUSTEE

{¶ 18} The powers and duties of a trustee are determined by the terms of the trust. *Daloia v. Franciscan Health Sys.* (1997), 79 Ohio St.3d 98, 102, 679 N.E.2d 1084, 1089. Applied to the trusts in dispute, the words conferring power to the trustee give to the trustee "sole discretion" in distributing the net income. The trusts also state that distributions are to be made for a "Worthy Legal Municipal Purpose or Purposes" as "*said Trustee may deem advisable*." (Emphasis added.) Thus, the words of the trusts plainly allow the trustee, solely, to determine when and for what purposes monies shall be distributed from the trust. The words "sole discretion," taken in their common and ordinary meaning, are clear and unambiguous. By the use of those words, the settlors clearly intended that the

---

2. That these trusts are charitable is also demonstrated by the amendment to the language of the now merged trust, which states that the trust is "organized exclusively for charitable * * * purposes."

trustee be the lone decisionmaker in determining both the timing and the purpose of trust distributions.

{¶ 19} However, the trustee must also fulfill certain duties in making distributions under the terms of the trusts. In exercising his or her discretion, the trustee must comply with the standards guiding the timing and use of the distributions as also set forth in the language of the trusts. The trusts require the trustee, in exercising his discretionary power, to make a distribution of the net income at least every twenty years "[a]fter the death of * * * Harold Brooke Ressler." The trusts require that any distribution of income from the trusts must be for a purpose that is of a "substantial and permanent nature and be a benefit to said Village," and perpetuate the names of the settlors in some way. Thus, any distribution must be used for a purpose that achieves a meaningful, lasting benefit for the community.

{¶ 20} The trusts also provide that the trustee shall make each distribution for "such Worthy Legal Municipal Purpose or Purposes as said Trustee may deem advisable." The city interprets the trustee's power to determine "worthy legal municipal purpose" by stating, "[t]he settlors intended to have the governmental entity, through its elected officials, *i.e.* City Council, select the use or uses for the income earned by the Trusts, while the Trustee, presumably a respected member of the business community, *would operate as a non-partisan advisor to the City* with ultimate authority to determine whether the Trusts' income was being used for a 'Worthy Legal Municipal Purpose.' " (Emphasis added.) We cannot agree.

{¶ 21} We recognize that the city council may be perceived as an appropriate entity in determining how funds can be applied for the common good of the community, but as settlors of their trusts, Mary Brooke and Edith Gould could reasonably have held a different view. A plain reading of the language of the trusts indicates that the trusts confer "sole discretion" on the trustee and the power to make distributions for such worthy municipal purposes "as said Trustee may

deem advisable." The common meaning of these terms used by the settlors can only suggest that the trustee has lone decisionmaking power over the timing and purpose of distributions, subject to the standards established in the remaining language of the trusts. The language of the trusts does not give the city any authority in the administration of these trusts.

{¶ 22} Further, the city's position is internally inconsistent. The city states that the trustee is confined to serving as a "non-partisan advisor to the City with ultimate authority to determine whether the Trusts' income was being used for a 'Worthy Legal Municipal Purpose.' " By this statement, the city suggests that the trustee may only advise the city on its uses of the trusts' income, but that somehow the trustee retains "ultimate authority" to determine the propriety of the use, *after* a distribution has been made.

{¶ 23} This view by the city cannot be reconciled with the language of the trusts. The trusts state, "[the] Trustee *shall* * * * give the net income * * * for such Worthy Legal Municipal Purpose or Purposes as said Trustee may deem advisable." (Emphasis added.) The word "shall" is a verb used to indicate simple future time. Webster's Third New International Dictionary (1986) 2085. The language "as said Trustee may deem advisable" confirms the discretionary power of the trustee to assure that funds will be used for a worthy legal municipal purpose. The trustee, duly authorized to carry out the wishes of the settlors, may determine what proposed uses best meet those wishes. By the use of the word "shall," as well as a plain reading of the trusts, it is evident that the settlors clearly intended for the trustee to make this determination in advance of any distribution. Such an intention is sensible in light of the duty of any trustee to ensure that the interests of a settlor or settlors are protected prior to any distribution of funds.[3]

---

3. The city's contention that it has power to select the uses for the trust funds is also inconsistent with the history of the original distribution. A citizens group, not the city, proposed the library project, and the trustee agreed to support it.

**{¶ 24}** The language "as said Trustee may deem advisable" clearly allows the trustee to make distributions for uses which the trustee, in the trustee's discretion, determines to be of a worthy legal municipal purpose. In extending this decisionmaking authority to the trustee, the settlors delegated, to the trustee, the determination of what constitutes such a purpose, subject to the worded limitations specified by the settlors. Further, we note the definition of "municipal purposes," as found in Black's Law Dictionary (6 Ed.1990) 1018: "Public or governmental purposes as distinguished from private purposes. It may comprehend all activities essential to the health, morals, protection, and welfare of the municipality." This definition is broad. It does not limit the trustee to purposes as determined or defined as "municipal" by the local government of Eaton. Rather, a proper purpose may be any proposal, public in nature, such that it benefits the community in its entirety, is of a "substantial and permanent nature," and perpetuates the name of the settlors in some way.

## BENEFICIARIES OF THE TRUST

**{¶ 25}** The court of appeals determined that the plain and unambiguous language of the trusts indicates that the phrase " 'Village of Eaton, Preble County, Ohio' means the legal entity of the city and the residents of the city. In this manner, the city is not the sole beneficiary under the trusts, but a co-beneficiary with the residents of the city." We disagree.

**{¶ 26}** The trusts' language, when taken in its ordinary and common meaning, and when viewed within the context of the other provisions of the trusts, suggests that it was not the intent of the settlors to give beneficiary status to a governmental entity. The trusts' language states that the trustee shall give the net income "to the Village of Eaton, Preble County, Ohio." Black's Law Dictionary at 1569 provides as follows, "[t]raditionally, word 'village' has connoted an area possessed of some attributes of a community, and is not a technical word, or one having a peculiar meaning, but is a common word in general usage and is merely

an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group. * * * [I]n some states, this is the legal description of municipal corporations of smaller population than 'cities' * * *."

{¶ 27} The city accepts this definition, but points to the capitalization of the word "village" in the trusts in contending that the court of appeals was correct. The city makes a reasonable argument. However, we consider the city's reliance on the capitalization of "village" to be of little importance, in view of the numerous common words also capitalized in the trusts.[4]

{¶ 28} Additionally, basic trust law and a reading of the trust instruments do not support this view. First, the trusts provide that a community leader (a local bank president), not an elected official, shall serve as trustee. The trusts then grant sole authority to make distributions from the trusts for uses that the trustee deems to be of a worthy legal municipal purpose. As stated earlier, the trusts do not provide the local government with any role in that decisionmaking process. Further, the trusts' language clearly contemplates a use on behalf of all community residents by providing that any use shall be "of a substantial and permanent nature and be a benefit to said Village." These provisions of the trusts make it unlike those trusts where the municipal corporation serves as the trustee, or those trusts where monies are designated for a specific use. See Bogert, Trusts & Trustees (2 Ed. Rev.1992) 437, Section 328, and Bogert (1991), at 193, Section 378. Rather, the language of these trusts demonstrates the intention of the settlors to establish an instrument for the benefit of the community. A respected community member (the local bank president) shall determine proper public uses for the benefit of the community, and then distribute funds to the entity responsible for financing such a use. That entity may or may not be a governmental entity.

---

4. *E.g.*, "Worthy," "Legal," "Municipal," "Purpose," "Purposes," and "Trustee."

**{¶ 29}** Beneficiaries of charitable trusts are often not specifically determinable. "[N]ot only is a charitable trust permitted by law to have vague, undefined, uncertain beneficiaries, but * * * it is required to have such beneficiaries; and * * * the very essence of a charitable or public trust lies in the indefiniteness of the charitable trust beneficiaries." Bogert (1991), at 26, Section 363. The public or the community is the "real beneficiary of every charitable trust," while "particular human beings who are the mere conduits of the social benefits to the public" are not. *Id*. at 27.

**{¶ 30}** The consequences of adopting the city's view are aptly illustrated by the record. In 1995, the Eaton School Board requested support from the trusts to support the construction of a new high school. The trustee agreed to support the project. In a letter to the trustee dated December 20, 1995, the city apparently adopted the position that the trusts were created to benefit only the local government. Referring to the school project, the city stated, "We very much concur that such a project is important to the community," but added that "we have concerns as to whether educating students is, indeed, a municipal purpose and *it seems clear to us that the trust funds are intended to specifically benefit the City of Eaton.*" (Emphasis added.) (In the same letter, the city requested money to fund a new emergency medical services building.) The city has argued that because it was not involved in the school project and "did not receive the funds pledged by the Trusts, * * * the Trustee's pledges are inconsistent with the express language of the Trusts."

**{¶ 31}** We believe, however, that the trustee's decision to support a project for the children of Eaton is consistent with the language of the trusts. The language of the trusts clearly indicates that the trustee has power to determine when and how the trusts' funds shall be used, subject to the standards as noted earlier. The city may propose uses for the trusts' funds, but it cannot make the ultimate decision

regarding the use of those funds, nor can it interfere with distributions that are not made to entities of city government.

{¶ 32} Our analysis of the law and the trusts' language causes us to conclude that the true beneficiaries are the residents of Eaton. Residents who come into contact with the uses of the trust funds (for example, by visiting the library) are the "conduits of the social benefits" conferred by the trusts to the residents. The city government, in its legal form as a municipal corporation, is but one possible agent by which the benefits of the trust funds are procured. "[I]t is more accurate to say that the real beneficiary is the public or community and the persons involved are merely instrumentalities through which the community benefits flow." Bogert (1991), at 28, Section 363. The trustee must abide by the standards of the trust in exercising his power, *i.e.*, that funds be distributed only for a worthy legal municipal purpose, that the use or uses be of a substantial and permanent nature and a benefit to the community, and that the gift perpetuate the name of the settlors in some way.

## CONCLUSION

{¶ 33} For the foregoing reasons, the court of appeals erred in determining the city to be a co-beneficiary of the trusts, and in concluding that the city government is the sole entity intended to receive and expend the funds of the trusts. The trustee has sole authority, prior to distributing funds to any entity, to ensure that funds will be used for a worthy legal municipal purpose. The trustee may make this determination based upon any proposals submitted to him. The trusts do not grant the city council any authority to select the use for the funds, nor is city council the only entity that may submit proposals to the trustee for distribution of trust funds. A distribution may be made to any entity so long as the purpose for which funds are expended complies with the standards established in the trusts.

{¶ 34} We further conclude that the court of appeals erred by determining that the trial court erred in failing to award attorney fees to the city.

{¶ 35} Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court as modified by this opinion.

*Judgment reversed.*

DOUGLAS, RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

PFEIFER and COOK, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 36} I would affirm the judgment of the court of appeals.

{¶ 37} The majority reads the trust phrase "in his sole discretion" as applying to both the timing and the purpose of distributions from the trust. I depart from the court on this point. Instead, I read the phrase as applying only to the timing of distributions. The phrase is positioned between two timing restrictions. It reads, "[the] Trustee shall, from time to time, in his sole discretion, but in no event at greater intervals than 20 year periods after the death of such survivor, give the net income * * *." The use of the preposition "but" supports this view, as "but" signals a restriction on the discretion conferred and thereby limits the phrase from being applicable to the rest of the sentence. "Sole discretion" in this trust means only that the trustee has sole discretion to choose when to make distributions, but this exclusive discretion is bounded by the requirement that the trustee distribute the net income at least once every twenty years.

{¶ 38} I concede that the importance of this distinction is minimized by the trust language conferring broad powers on the trustee over the purposes of trust distributions through the trust language, "as said Trustee may deem advisable."

{¶ 39} I also respectfully disagree with the majority on its conclusion that the trust language makes the residents of the city the sole beneficiaries of the trust. Rather, I concur with the contrary conclusion of the court of appeals. It held that the city is the only entity intended to receive and expend the trust income to fulfill trust purposes deemed advisable by the trustee. The choice of the words

"Municipal Purpose[s]" rather than "Public Purpose(s)," coupled with the designation that the trustee "give * * * to the Village," supports this construction. The city is the logical conduit to receive and pass along funds given to benefit its residents.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____