This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Diana Jeanne Beck ("Diana"), appeals from a judgment of the Summit County Court of Common Pleas, Probate Division, that held that the attempt by her late father to exercise a power of appointment to distribute the assets of a trust held by Diana's step-mother was invalid. The court also held that the step-mother's trust had not been terminated by her husband's death but that it would continue to provide income to the step-mother's sister during the sister's lifetime. This Court affirms in part and reverses in part.
{¶ 2} This action was commenced by Diana's children, Hally Robinson and Brian Gearinger, challenging certain actions taken by William Beck, Diana's father, on two separate trusts executed by him and his wife, both of whom are now deceased. The only trust at issue in this appeal is the trust executed by William Beck's wife (Diana's step-mother), Lucille E. Beck, ("the Trust"). Pursuant to an amendment to the Trust, Lucille Beck had granted William Beck a power of appointment, to be exercised in his will, to distribute the Trust assets. William Beck attempted to exercise that power of appointment in his will, dividing the Trust assets outright between his two children, Diana and her brother, William Beck, Jr.
{¶ 3} The plaintiffs challenged the exercise of the power of appointment, contending that William Beck did not have the power to make an outright distribution of the Trust assets to Diana, because she was not a "lineal descendant" of Lucille Beck, as was required by the terms of the Trust.
{¶ 4} A further dispute arose as to whether the Trust in fact terminated upon the death of William Beck. Lucille Beck's sister, Helen Mohr, filed a counterclaim, asserting that the Trust did not terminate upon William Beck's death because her sister had granted her a right to the Trust income for the rest of her life.
{¶ 5} The trial court found against Diana on both claims. It held that William Beck's attempt to exercise the power of appointment had been ineffective because Diana is not a lineal descendant of Lucille Beck. It also found that the trust did not terminate upon William Beck's death because Helen Mohr retains a life interest in the Trust income.
{¶ 6} Diana appeals and raises two assignments of error.
 FIRST ASSIGNMENT OF ERROR
{¶ 7} "THE TRIAL COURT ERRED IN DECLARING THAT THE POWER OF APPOINTMENT, EXERCISED BY WILLIAM BECK, SR. IN HIS LAST WILL AND TESTAMENT, WAS INEFFECTIVE AS TO THE OUTRIGHT DISTRIBUTION OF ASSETS FROM THE LUCILLE E. BECK TRUST TO DIANA BECK."
{¶ 8} The power of appointment was set forth in Article 3(e) of the First Amendment to the Trust. It granted William Beck the power to appoint in his will the Trust assets "outright or in trust, to or for the benefit of any one or more of the Grantor's lineal descendants ***." William Beck, prior to his death, attempted to exercise the power of appointment by including a provision in his will that the assets of the Trust be distributed outright to his children, Diana and William Beck, Jr.
{¶ 9} The plaintiffs contended, and the trial court agreed, that the exercise of the power of appointment by William Beck was invalid because he failed to follow the instructions of Lucille Beck that the proceeds be distributed to her "lineal descendants." Because Diana is not the natural or adopted daughter of Lucille Beck, she is not her lineal descendant. The trial court further found that, because the term "lineal descendants" is clear and unambiguous, it would take no extrinsic evidence on the intent of Lucille Beck when drafting that provision.
{¶ 10} Diana asserts that the trial court incorrectly interpreted the term "lineal descendant" according to its ordinary meaning without any reference to extrinsic evidence of the settlor's intent. Diana is correct that, when construing the terms of a trust, courts must ascertain the intent of the settlor. However, "when the language of the instrument is not ambiguous, intent can be ascertained from the express terms of the trust itself." Domo v. McCarthy (1993), 66 Ohio St.3d 312, 314. Any words in the trust are presumed to be used according to their common, ordinary meaning. In re Trust of Brooke (1998), 82 Ohio St.3d 553, 557. Unless the terms of a trust are found to be ambiguous, no extrinsic evidence will be admitted to interpret the trust provisions. See PNC Bank, N.A. v. Camping Edn. Found. (Mar. 31, 2000), 1st Dist. No. C-990690; Craft v.Shroyer (1947), 81 Ohio App. 253, 258. Whether the language in a document is ambiguous is determined as a matter of law and that issue will be reviewed on appeal de novo. Nationwide Mut. Fire Ins. Co. v. GumanBrothers Farm (1995), 73 Ohio St.3d 107, 108.
{¶ 11} The term "lineal descendants," taken at its ordinary meaning, is not ambiguous. In fact, Diana does not even dispute that point. Instead, she asserts that the trial court erred in refusing to consider evidence of the settlor's intent. She relies on Casey v.Gallagher (1967), 11 Ohio St.2d 42, asserting that the trial court was required to consider evidence of the settlor's intent beyond the words expressed in the trust document itself. Her reliance on Casey, however, is misplaced. In Casey, the Supreme Court considered evidence outside of the language of the document only because "a situation arose that was not specifically provided for in the will under examination." Id. at 47. Because the situation in this case is fully addressed by the terms of the Trust, the trial court had no reason to consider extrinsic evidence. Consequently, it did not err for failing to do so. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
{¶ 12} "THE TRIAL COURT ERRED IN DECLARING THAT THE LUCILLE E. BECK TRUST DOES NOT TERMINATE UPON THE DEATH OF WILLIAM BECK, SR. AS EXPRESSLY PROVIDED FOR IN ARTICLE 3(E) OF THE LUCILLE E. BECK TRUST."
{¶ 13} Diana also assigns error to the trial court's conclusion that the Trust did not terminate upon the death of her father, William Beck. According to Diana, the explicit terms of the Trust provide for termination upon her father's death. However, Helen Mohr contended that the Trust could not terminate until her death because she retained a life interest in the Trust income.
{¶ 14} The operative provisions of the Trust are the following:
{¶ 15} "3. Trust Estate: Upon Grantor's death, the Trustee shall continue to hold and manage the trust estate as follows:
{¶ 16} "(a) From the net income of the trust, the Trustee shall pay to Grantor's sister, HELEN I. MOHR, if she shall survive the Grantor, the sum of Fifteen Thousand Dollars ($15,000.00) per year payable in monthly installments. The Trustee may use and apply any additional income for her necessary maintenance and support in the Trustee's discretion. In addition to such payments of income, the Trustee shall have power and authority to pay to Grantor's said sister from time to time from the principal of this trust such sum or sums as it may deem necessary or proper to provide for her suitable support and maintenance, including, but not limited to, medical expenses, hospital and institutional care, provided her income from this trust and other sources shall prove, in the judgment of the Trustee, inadequate for such purposes.
{¶ 17} "(b) Upon the death of Grantor's sister, HELEN I. MOHR, or in the event she shall fail to survive Grantor, the net income of the trust estate, in the sole and absolute discretion of the Trustee, and without the Trustee being required to observe any precept or rule of equality, may be:
{¶ 18} "(i) Distributed in whole or in part to Grantor's husband, WILLIAM M. BECK;
{¶ 19} "(ii) Distributed in whole or in part to WILLIAM M. BECK, JR. or DIANA JEANNE BECK;
{¶ 20} "(iii) Distributed in whole or in part to one or more of the descendants of WILLIAM M. BECK, JR. or DIANA JEANNE BECK; or
{¶ 21} "(iv) Accumulated in whole or in part and added to the principal of the trust."
{¶ 22} The only termination provision in the Trust is the following:
{¶ 23} "3(e) Upon the death of Grantor's husband, William M. Beck, the Family Trust shall be distributed outright or in trust, to or for the benefit of any one or more of the Grantor's lineal descendants, spouses, and surviving spouses of any such lineal descendants, and charities in such amounts and proportions, and upon such terms, powers, or conditions as the Grantor's husband shall appoint in his Will specifically referring to this power. In default of the effective exercise of this power to appoint, or if the Grantor's husband predeceases the Grantor, the Trustee shall divide the trust estate as constituted into two equal shares. One such share shall be distributed to William M. Beck Jr. if then living; otherwise, his share shall pass to his then living lineal descendants, per stirpes (subject to the provisions of Article 3(f)). The remaining share shall be set aside and retained in trust for the benefit of Diana Jeanne Beck, if then living and shall be held and disposed of pursuant to the terms of Article 3.5 below. If Diana Jeanne Beck is not alive, then her share shall be distributed outright to her then living lineal descendants, per stirpes (subject to the provisions of Article 3(f))."
{¶ 24} The trial court concluded that, when these provisions are read together, "an ambiguity seems to appear" as to when the Trust terminates. Consequently, it allowed the parties to present extrinsic evidence and, from that evidence, concluded that it was the intent of Lucille Beck that the Trust provide income to Helen Mohr for the duration of her life.
{¶ 25} As Diana correctly notes, the construction of the terms of the Trust is decided as a matter of law and is, therefore, reviewed de novo. See In re Estate of Davis (1996), 109 Ohio App.3d 181, 183. Given that stringent standard of review, this Court must disagree with the trial court's conclusion that the Trust is ambiguous as to when it terminates. "`[A]mbiguity'" is defined as `the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time[.]'" Boulger v. Evans
(1978), 54 Ohio St.2d 371, 378, quoting Webster's Third New International Dictionary. This Court fails to see how these provisions could be understood in more than one way.
{¶ 26} Although Articles 3(a) and (b) provide that Helen Mohr had a right to the income from the Trust, there is no language to indicate that Mohr retained that interest for the duration of her life. These provisions merely pertain to the distribution of the income during the life of the Trust. It is completely unrelated to the distribution of the principal and undistributed income upon termination of the trust. The only provision in the Trust that addresses termination is Article 3(e), which clearly provides for termination upon the death of William Beck. According to the terms of the trust, Helen Mohr had an interest in the trust income during the life of the Trust. When William Beck died, the Trust terminated.
{¶ 27} Because the terms of the Trust were clear and unambiguous that the Trust was to terminate upon the death of Lucille Beck's husband, William Beck, the trial court erred by considering extrinsic evidence on the issue and by reaching a contrary conclusion. The second assignment of error is sustained. Judgment affirmed in part, reversed in part, and the cause remanded.
BAIRD, P.J. and BATCHELDER, J. CONCUR.