{¶ 1} The instant appeal stems from a final judgment of the Columbiana County Court of Common Pleas, Probate Division. Appellant, the Salem Area Humane Society, Inc., primarily seeks the reversal of the trial court's decision to designate appellee, the Salem Humane Society, Inc., as the sole beneficiary of certain trust funds.
 {¶ 2} The subject matter of the underlying case concerns the proper interpretation and application of the various terms of the will of Robert M. Atchison, who was a resident of Columbiana County at the time of his death on July 30, 1959. Item 4 of the Atchison will generally stated that the majority of the estate assets would be placed in a testamentary trust which would be administered by Donald L. Vincent as trustee.[1] Item 4 also stated that Atchison's wife would be the primary beneficiary of this trust during her lifetime. However, once his wife had died, Trustee Vincent was required under the will to convert the remaining applicable assets into cash and execute seven new specific bequeaths to Atchison's niece and six charitable entities. As to the seventh new beneficiary, the will provided for the following distribution:
 {¶ 3} "7. To Donald L. Vincent and Carl Willman, as Trustees for the Salem Humane Society, the sum of $10,000.00, and said money, both income and principal, shall be used for the care of or for the destruction of aged or distressed animals, and if, in the judgment of said Trustees it is practical so to do, I suggest that they build a shelter house for small animals; * * *."
 {¶ 4} The Atchison will further stated that, once the seven new bequeaths of cash had been made, the residue of the trust would then be held and employed in the future for the same purpose as was stated in the foregoing provision. Thus, when Atchison's wife died in 1961, the initial sum of $10,000 was set aside in the trust for the benefit of old or distressed animals through the Salem Humane Society. Furthermore, after the other six new bequeaths had been executed, approximately $200,000 in additional funding was retained in the Atchison trust for the continuing benefit of those animals and the Society.
 {¶ 5} Immediately after the formation of the Atchison trust, all proceedings pertaining to its administration were held under the original case in which the Atchison will had been admitted to probate. However, when the attorney for the trust submitted in August 1969 an application for the appointment of a new testamentary trustee, the matter was given a new probate case number. All subsequent proceedings relating to the trust, including those which are the subject of this appeal, have been held under the new case.
 {¶ 6} Consistent with the terms of the will, the Atchison trust was initially administered by Trustee Vincent and Carl Willman. In 1969, the trust's attorney moved the trial court to name a new second trustee on the basis that Willman did not desire to serve in that particular role. As a result, Attorney South Metzger was named the second trustee, and continued to serve in that capacity until the late 1970's. Once Attorney Metzger became unable to fulfill his duties to the trust, Trustee Vincent then began to administer the trust by himself.
 {¶ 7} From 1969 until 1999, Trustee Vincent filed with the trial court yearly statements showing the status of the assets in the trust.[2]
During this period, Trustee Vincent made certain investments with trust funds which resulted in the quadrupling of the value of the trust. In addition, he continued to distribute trust funds in accordance with the purpose delineated in the Atchison will. All of these yearly distributions were given to the same non-profit corporation which was engaged in the express business of providing care to the animal population in the Salem area.
 {¶ 8} As of 1959, the corporate entity which was attempting to help area animals was the Salem Humane Society. This was the specific entity to which the Atchison will had referred in establishing the trust. This entity had been in existence since 1909, when it had received its corporate charter from the State of Ohio.
 {¶ 9} In 1961, the corporate name of the Salem Humane Society was changed to the Salem Area Humane Society, Inc. However, despite the technical name alteration, the entity still functioned under its 1909 charter. The basic corporate structure of the Salem Area Humane Society remained unchanged until 1982 when the State of Ohio revoked the 1909 charter on the basis that the charter had not been properly renewed.
 {¶ 10} At the time of the revocation, none of the entity's membership was aware of the problem. As a result, no steps were taken to obtain a new charter until the problem was finally discovered in 1994. During the interim period, the Salem Area Humane Society continued to function on a de facto basis, and also continued to receive funding from the Atchison trust. When the entity did obtain a new charter from the state, its membership decided to keep the same name: i.e., the Salem Area Humane Society.
 {¶ 11} In providing funding to this particular entity for over thirty years, Trustee Vincent usually gave the entity only sufficient funds to pay for a portion of its ordinary operating expenses each year. However, there were some instances in which the trust gave the entity more funding to cover extraordinary expenses. For example, in the early 1970's, the trial court allowed the trust to give the Salem Area Humane Society approximately $40,000 to assist in the purchase of real property in Salem, Ohio. Although the title to the property remained in the name of Trustee Vincent, the entity developed the land and its buildings into an animal shelter. Trustee Vincent further approved the expenditure of funds to pay for improvements to the property.
 {¶ 12} In February 1995, the Salem Area Humane Society moved the trial court for the appointment of a second trustee who could succeed Trustee Vincent if he should ever become unable to fulfill his duties. After holding a hearing on the matter, the trial court issued a judgment in which it essentially denied the Society's motion. As the basis for this decision, the trial court found that, in administering the trust, Trustee Vincent had followed the advice of certain individuals who were familiar with the trust and would be available to guide any successor trustee; hence, the continuity of the trust was ensured even if a second trustee was not appointed at that time. The court also found that the Society's proposed second trustee was not acceptable because she was closely aligned with the Society. Nevertheless, despite its holding on the pending motion, the court also "encouraged" Trustee Vincent to focus his attention more on the Society's basic needs.
 {¶ 13} Although the trial record is unclear as to how the issue was raised, the foregoing judgment also addressed the issue of whether title to the real property containing the animal shelter should be transferred from Trustee Vincent to the Salem Area Humane Society. The trial court concluded that such a transfer should occur if it would qualify the Society for an exemption to the county real estate taxes. Based upon this, the court ordered that, unless the attorney for the Atchison trust raised an objection to the matter prior to July 1, 1995, the transfer of the title to the Society should take place.
 {¶ 14} The attorney for the trust never filed a timely objection to the proposed transfer of title; despite this, no steps were ever taken in July 1995 to complete the transfer. More than five months later, in December 1995, the attorney for the trust submitted to the trial court a letter in which he indicated that he believed that the transfer was not necessary because, after the issuance of the foregoing judgment, he had located a document in his files showing that the county had granted the Society a tax exemption regarding the property in the 1970's. Even though a copy of this letter was docketed in the trial record and was mailed to the Society's separate counsel, the Society never filed a response to the letter. Moreover, the trial court never issued a second judgment on the matter
 {¶ 15} Nearly four years later, in August 1999, the Society's current treasurer mailed the trial court a letter in which she alleged that she could not account for certain funds which had supposedly been given to the Society. For example, the treasurer stated that one member had failed to submit to her certain funds the member had collected for adoption fees. After holding a conference on the issues raised in the letter, the trial court issued a judgment in which it concluded that certain funds of the Salem Area Humane Society had been converted and that the organization was not being operated in a professional manner.
 {¶ 16} Upon holding a second conference in January 2000, the trial court rendered a second judgment in which it found that, although the converted funds had been returned in part, the Society still had considerable problems in its management. As a result, the trial court ordered Trustee Vincent not to make any further distributions from trust funds to the Society. The court also appointed a special master commissioner to monitor the operations of the organization.
 {¶ 17} Over the next few months, the special master commissioner submitted a number of reports to the trial court. In these reports, he stated that the Society's management was still experiencing certain problems, including: (1) holding proper elections for seats on its board of directors; (2) following the corporate by-laws concerning the holding of office; (3) allowing some members to use the facilities at the animal shelter for their own animals; (4) maintaining the shelter in a safe and clean manner; (5) improper conduct of the Society's humane officer; and (6) controlling the effect of noises emanating from the shelter on the surrounding community.
 {¶ 18} As the special master commissioner continued to submit his reports, two factions developed among the Society's membership. The first group consisted of the members who had controlled the Society's board of directors over the past few years and had had primary responsibility for operating the shelter. After January 2000, this group began to work less at the animal shelter. The second group consisted of members who had just joined the Society and, accordingly, did not have much authority prior to January 2000. However, once the investigation into the Society started, this group gained more control over the operation of the shelter.
 {¶ 19} The dispute between the two groups of the Salem Area Humane Society reached its crest in October 2000 when ninety-four members of the second group held an annual meeting to conduct corporate business. This meeting was not attended by members of the first group. In this meeting, the ninety-four members voted unanimously to dissolve the 1994 charter of the Salem Area Humane Society. Based on this vote, a certificate of dissolution was filed with the Ohio Secretary of State.
 {¶ 20} As part of the October 2000 meeting, the members of the second group further voted to form a new non-profit corporation. This new entity was first incorporated under the name "Humane Society of Salem, Inc." However, when it was later discovered that the foregoing name had already been reserved, the new corporation's title was altered to "Salem Humane Society, Inc." As was noted above, this entity is the appellee in the instant appeal.
 {¶ 21} Once it had achieved its corporate status, the Salem Humane Society, appellee, moved the trial court to name it as the new beneficiary of the Atchison trust. In addition to noting that the Salem Area Humane Society had been dissolved, appellee contended that its members had resolved the problems which had caused the court to prohibit any additional funding to the old entity. Appellee further emphasized that its members had been responsible for various improvements to the animal shelter over the past year.
 {¶ 22} In response to the foregoing actions of appellee, the first group of members from the old entity argued that the members of the second had lacked the power to dissolve the old entity. However, as the trial court prepared to go forward on appellee's motion, the first group essentially abandoned this position and formed a new corporation named "Humane Society of Salem, Inc." After attempting to operate under the new charter for this entity for approximately five months, the first group decided to dissolve this specific entity and form a new corporate entity under the name "Salem Area Humane Society." However, the existence of this second new entity was also short-lived. Ultimately, the first group chose to obtain the reinstatement of the original 1909 charter for the "Salem Area Humane Society, Inc." Although this final act of legal maneuvering did not change the name under which the first group was operating, it did allow the first group to claim that it was continuing the work of the original humane society.
 {¶ 23} In regard to appellee's motion to be named as the new beneficiary, the reinstated Salem Area Humane Society, appellant, argued that it was the proper entity to receive funding from the trust because it was the "corporate descendent" of the corporate entity to which the Atchison will had referred. Appellant further argued that awarding the trust funds to its organization would not defeat the purpose of the trust because its members had resolved all of the prior problems which had led to the discontinuation of funding. As to the real property upon which the animal shelter was located, appellant asserted that, pursuant to the trial court's May 1995 judgment, its organization was the proper holder of the title to the land.
 {¶ 24} In May 2001, Trustee Vincent submitted a petition in which he requested the trial court to declare the extent of his authority under the Atchison will. After alleging that the dispute between appellant and appellee could not be settled, Trustee Vincent asserted that he had the power to decide which humane society was entitled to be the beneficiary to the trust funds. In regard to the property used for the animal shelter, Trustee Vincent stated that appellant presently had control of the shelter, and that he had been receiving continuing complaints about the noise emanating from the property. Based upon this, he requested that he be given the authority to sell the property.
 {¶ 25} In September 2001, the trial court held a hearing regarding the disposition of the property in question. In light of an agreement the parties negotiated during that hearing, the trial court rendered a judgment in which it granted Trustee Vincent the authority to sell the entire property, including the shelter. The court also ordered Trustee Vincent to place the proceeds of the sale into an escrow account pending the final disposition of the entire matter.
 {¶ 26} The final hearing on the remaining issues before the trial court was held in early November 2001. During this proceeding, Trustee Vincent testified in his own behalf. In support of its motion to be designated the new trust beneficiary, appellee presented the testimony of its current vice president. In addition, appellee called appellant's current board president as a witness on cross-examination. In response, appellant presented the testimony of its current vice president, treasurer, and humane officer.
 {¶ 27} On December 18, 2001, the trial court issued its final decision in favor of appellee and Trustee Vincent. Regarding the "ownership" of the land used for the animal shelter, the court found that the property had not been transferred in 1995 because the attorney for the trust had raised a proper objection to the proposed transfer. The trial court also found that the property had been bought and improved with trust funds. As a result, the court concluded that Trustee Vincent was entitled to retain the proceeds from the sale of the property in the Atchison trust.
 {¶ 28} As to the "beneficiary" issue, the trial court first held that Trustee Vincent did not have the authority to determine which humane society should be the beneficiary of the trust; instead, that decision had to be made by the court itself. As to the merits of this issue, the trial court found that: (1) appellant's organizational status was still unstable; (2) there were still questions concerning the propriety of certain expenditures made by appellant; (3) there were still questions concerning the ability of appellant's members to operate any animal shelter; (4) appellee had already developed a diverse directorship and had demonstrated an ability to maintain programs for animals; and (5) appellee was already financially stable. In light of these findings, the court ultimately concluded that appellee was the "rightful" beneficiary to the Atchison trust.
 {¶ 29} In now appealing from the foregoing final judgment, appellant has assigned the following as error:
 {¶ 30} "The trial court erred and abused its discretion to the prejudice of appellant when it determined the Salem Humane Society, Inc., to be the rightful successor to Mr. Atchison's named `Salem Humane Society" and beneficiary to the trust and, therefore, the December 18, 2001, decision of the court must be reversed.
 {¶ 31} "The trial court abused its discretion to the prejudice of appellant when it found the subject real estate was the property of the trust and further, by sua sponte voiding its previous decision dated May 15, 1995."
 {¶ 32} Prior to addressing the merits of the two assignments, this court would note that appellee has moved us to dismiss this appeal on the basis that appellant does not have standing to maintain this matter. In support of this motion, appellee emphasizes that the present "Salem Area Humane Society" is not the same entity which had received funds from the trust since at least 1994. Based on this, appellee argues that, since appellant is a new entity which never moved the trial court to intervene at the trial level, it should not be allowed to maintain the instant appeal.
 {¶ 33} As to this point, our review of the trial record indicates that, prior to the hearing in November 2001, appellee expressly challenged appellant's standing to participate in the consideration of the "beneficiary" issue. However, the record also shows that, as part of his opening statement during that hearing, counsel for appellee withdrew any objection his client had concerning the right of appellant to participate in that hearing. In light of this waiver at the trial level, we conclude that appellee has waived its ability to contest appellant's standing to go forward with this appeal. Hence, appellee's motion to dismiss lacks merit.
 {¶ 34} Under its first assignment, appellant contends that the trial court did not follow the proper analysis in deciding which humane society should be the beneficiary of the Atchison trust. Appellant asserts that the trial court should have predicated its decision solely on its determination of which entity was the humane society that had been cited in the will. Appellant further maintains that if the court had applied this analysis, it would have held that appellant was still entitled to receive all funding from the trust.
 {¶ 35} In the appealed judgment, the trial court expressly stated that it did not consider appellant's corporate history to be a critical factor in deciding the "beneficiary" question. Instead, the trial court's decision to designate appellee as the new beneficiary turned on its determination that appellee was better prepared to fulfill the purpose of the trust. As a result, the issue before this court is whether the trial court could base its decision on that factor in this instance.
 {¶ 36} As a general proposition, the parameters of a trustee's authority are controlled by the specific terms of the trust. In re TrustU/M of Brooke (1998), 82 Ohio St.3d 553, 557. In interpreting the terms of a trust, a trial court's first consideration is to ascertain and enforce the intent of the settlor. Daloia v. Franciscan Health Sys. ofCent. Ohio, Inc. (1997), 79 Ohio St.3d 98, 103. If the language of the trust document is unambiguous, the trial court's determination of intent must be predicated solely upon the terms themselves, not parol evidence.Id.
 {¶ 37} Under the foregoing precedent, a trial court is not free to modify the terms of the trust when a modification would conflict with the settlor's intent. However, the courts of this state have recognized a specific exception to this general rule: "The court will order a deviation from the terms of the trust if it appears to the court that compliance with the terms of the trust is impossible, illegal, impracticable or inexpedient, or that, owing to circumstances not known to the settlor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purpose of the trust." Craft v. Shroyer
(1947), 81 Ohio App. 253, 272.
 {¶ 38} In recently applying the doctrine of "deviation," the Supreme Court of Ohio has indicated that the doctrine can be employed to name a new beneficiary for the funds of a trust. In Daloia, the trust documents stated that the trust funds were to be given to a specific hospital so that the funds could be used to help the poor in accordance with the hospital's mission. After the trust funds had been given to a Franciscan foundation for distribution to the hospital, the foundation sold the hospital at issue. When the trustee asked that the funds be returned, the foundation stated that it intended to distribute the funds to a second hospital for the poor in a separate city.
 {¶ 39} The Daloia trustee then brought suit against the foundation, arguing that giving the trust funds to a second hospital would violate the intent of the settlors. In upholding the trial court's decision to allow the foundation to retain the funds, the Supreme Court held that the doctrine of deviation was applicable in this instance because the sale of the first hospital made it impossible to satisfy the specific terms of the trust. The Court also noted that distributing the funds to the second hospital would be consistent with the settlors' intent because they had wanted the funds to be used to provide treatment for the poor.
 {¶ 40} In the instant action, Item 4 of the Atchison will referred solely to the "Salem Humane Society" as a beneficiary to the trust funds. In light of the fact that the Atchison will was executed in 1956 and appellee did not exist as a corporate entity until 2000, it follows that Robert C. Atchison was not referring to appellee when he created the trust in question. Thus, in order for the trial court to properly hold that appellee could be the new beneficiary of the trust, it had to find that the doctrine of deviation was applicable in this instance.
 {¶ 41} However, as part of its final judgment in this case, the trial court expressly stated that it was not applying the doctrine of deviation to reach its ultimate determination on the "beneficiary" issue. Instead, the trial court stated in the judgment that it was "merely trying to determine which organization is the rightful successor" under the Atchison will. In light of the Daloia decision, the court concludes that the trial court has no authority to choose a successor to the Atchison trust unless it is applying the doctrine of deviation. That is, the trial court cannot name a new beneficiary of the trust funds unless it finds that new circumstances exist which warrant the application of the doctrine.
 {¶ 42} Furthermore, our review of the appealed judgment readily indicates that the trial court did not make a specific finding under which the doctrine of deviation could apply. For example, the court never made a finding as to whether appellant should be viewed as the corporate descendent of the entity cited in the will. If the court had found that the original "Salem Humane Society" no longer existed and that appellant constituted a new corporate entity, it could have then held that the doctrine of deviation did apply because it was now impossible to distribute the trust funds to the entity referenced in the will. In turn, the trial court could have then chosen between appellant and appellee solely on the basis of which party would be better qualified to fulfill the purpose of the trust.
 {¶ 43} Similarly, the trial court did not find that, even though appellant was the corporate descendent of the original Salem Humane Society, the trust funds should no longer be given to appellant because such an act would defeat the purpose of the trust. As to this point, this court would emphasize that, as we read the appealed judgment, the trial court only found that appellee was presently better able to satisfy the purpose of the trust. In our view, such a conclusion is not the same as the conclusion that distributing the funds to appellant would defeat or substantially impair the purpose of the trust
 {¶ 44} In conjunction with the foregoing analysis, this court would indicate that we have not made a determination as to whether the evidence in this case could have supported a finding that the doctrine of deviation was applicable in this instance. Instead, we are merely holding that: (1) the trial court could not name appellee as the new beneficiary unless the doctrine of deviation is applicable to the facts of this case; and (2) even if the trial court had intended to apply the doctrine, it never made a requisite finding to invoke the doctrine.
 {¶ 45} As an aside, we would further note that, in a separate part of the final judgment, the trial court concluded that it had not been necessary under R.C. 109.25 to make the Ohio Attorney General a party to the case because, inter alia, the doctrine of deviation was not pertinent. In light of our holding that appellee cannot be named the new trust beneficiary unless the doctrine is applicable, it will now be necessary for the trial court to reconsider this point prior to issuing any new decision on appellee's motion concerning the beneficiary issue. Ultimately, it may be necessary for the trial court to hold a new hearing on appellee's motion, instead of rendering a new decision on the matter based upon the evidence from the November 2001 hearing.
 {¶ 46} Pursuant to the foregoing discussion, this court holds that the trial court failed to follow the correct analysis in determining whether appellee could be named as the new beneficiary of the Atchison trust. To this extent, appellant's first assignment of error has merit.
 {¶ 47} Under its second assignment, appellant challenges the merits of the trial court's decision to award the proceeds of the sale of the real property to Trustee Vincent and the trust. Appellant contends that the award was improper because the title to the land was transferred to it under the May 1995 judgment. Appellant further submits that, by not awarding the proceeds to it, the trial court erred in vacating its own prior judgment on the matter.
 {¶ 48} In regard to the transfer of the real property in question, the trial court's May 1995 judgment contained the following order:
 {¶ 49} "6. Further, the Court cannot conceive of any reason why the subject real estate owned by the Trust on West State Street in Salem and occupied by the Humane Society should not be transferred to the Humane Society, thus entitling that Society to an exemption from real estate taxes, pursuant to O.R.C. Section 5709.12. In the absence of any objection from counsel for the Trustee, the Court directs that the necessary steps be taken in order that the property may be so transferred not later than July 1, 1995."
 {¶ 50} As was noted above, although counsel for Trustee Vincent did file an objection to the proposed transfer, that objection was not submitted until December 1995. Based on this, appellant argues that the trial court was required to hold in the appealed judgment that the transfer of title had already occurred before the late objection was filed.
 {¶ 51} While this court would readily agree that the language of the May 1995 judgment supports the conclusion that the trial court intended for any objection to be filed prior to July 1, 1995, we would also note that the record before us demonstrates that appellant never objected to the timing of counsel's objection. Specifically, the record shows that a copy of counsel's letter was sent to appellant's counsel after it had been filed with the trial court. Despite this, appellant never filed a response to the objection. As a result, the trial court was never given the opportunity to consider the timeliness issue in 1995.
 {¶ 52} Furthermore, this court would note that appellant has not contested the assertion of counsel in the letter that appellant already had the tax exemption. In light of the fact that the trial court had stated that obtaining the tax exemption was the only reason for the proposed transfer of title, counsel's assertion essentially rendered this specific point moot. That is, since the Atchison trust had paid for the property and many subsequent improvements, appellant had no claim on it except for purposes of the tax exemption.
 {¶ 53} Because appellant did not object to the timeliness of counsel's letter in 1995, it waived the right to raise the "transfer" issue before the trial court during the November 2001 proceeding. Thus, as the trial court did not err in awarding the proceeds of the sale of the real property to Trustee Vincent and the trust, appellant's second assignment lacks merit.
 {¶ 54} Consistent with our analysis under the first assignment of error, it is the order and judgment of this court that the judgment of the trial court is reversed in relation to the "beneficiary" issue, and the case is hereby remanded for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.
JUDITH A. CHRISTLE and ROBERT A. NADER, JJ., concur.
Donald R. Ford, P.J., of the Eleventh Appellate District, Judith A. Christley, J., of the Eleventh Appellate District, and Robert A. Nader, J., Retired, of the Eleventh Appellate District, Sitting By Assignment.
[1] Trustee Vincent is also an appellee in the instant appeal. However, for the sake of clarity, the term "appellee" will only be used throughout this opinion to refer to the Salem Humane Society, Inc. Trustee Vincent shall be referred to by his proper name.
[2] Since the trial record before this court begins in August 1969, it cannot be determined whether Trustee Vincent followed this same procedure during the eight-year period after the death of Atchison's wife in 1961.