DECISION.
{¶ 1} Defendants-appellants The Christ Hospital, the Ohio Attorney General, and the Hospice of Cincinnati ("HOC") appeal the probate court's grant of summary judgment in favor of defendant-appellee the American Cancer Society ("ACS") in a declaratory-judgment action to determine the proper beneficiary of the will and trust of Nancy O'Brien. For the following reasons, we affirm.
 {¶ 2} Nancy O'Brien died testate in April 2003. Her will, executed August 5, 1997, appointed plaintiff, U.S. Bank, as the executor. U.S. Bank was also the trustee of O'Brien's trust, which was originally dated December 13, 1989, and restated August 5, 1997. U.S. Bank filed a declaratory-judgment action naming The Christ Hospital, HOC, and ACS, all charitable organizations, as defendants because each was a potential beneficiary of O'Brien's will and trust. The relevant language contained in both the will and the trust directed that the residue of O'Brien's estate be distributed to "THE HOSPICE OF THE CHRIST HOSPITAL, Cincinnati, Ohio. In the event that organization (or its successor) is no longer in existence or is not a charitable organization at the time of such distribution, then * * * to the Hamilton County unit of the American Cancer Society * * * In the event there is no Hamilton County unit, then my estate shall pass to any other subdivision of the American Cancer Society."
 {¶ 3} Based on discovery responses, we ascertain that, from 1994 to 1998, The Christ Hospital provided hospice care to clients in their home environment under the name "The Hospice of The Christ Hospital." The Hospice of The Christ Hospital was never a separate legal entity. Instead, it was simply a "doing business as" name under which The Christ Hospital provided in-home hospice care. In 1998, The Christ Hospital stopped providing in-home hospice care and was no longer licensed by the state to provide such care.[1]
 {¶ 4} In 1998, The Health Alliance of Greater Cincinnati, which managed The Christ Hospital as well as other hospitals, entered into a collaborative relationship with United Home Care whereby The Christ Hospital would refer its patients to United Home Care's hospice program. But under the terms of the agreement, it was ultimately the patient's choice as to which provider he wanted to use for in-home hospice care. In 1999, United Home Care ceased providing hospice services and referred its patients to HOC. HOC employed five former employees of The Hospice of The Christ Hospital and/or United Home Care.
 {¶ 5} The Christ Hospital and the state[2] filed a joint motion for summary judgment, arguing that O'Brien intended to leave the remainder of her estate and trust assets to The Christ Hospital. The ACS also moved for summary judgment, contending that it was the proper beneficiary because The Hospice of The Christ Hospital was no longer in existence and it had no successor. Accordingly, the ACS argued, as the named contingent beneficiary, it was entitled to the remainder of O'Brien's estate. HOC opposed both motions, arguing that it was the successor to The Hospice of The Christ Hospital. In support of its argument, HOC submitted the affidavit of Catherine Beerman, one of O'Brien's friends. Beerman stated that O'Brien had told her that she was leaving her money to the hospice.
 {¶ 6} Ultimately the probate court granted ACS's motion for summary judgment and denied the state's and The Christ Hospital's joint motion for summary judgment. Both HOC and The Christ Hospital and the state timely appeal this judgment.
 {¶ 7} In its sole assignment of error, HOC contends that the probate court erred by granting ACS's motion for summary judgment. In their first and second assignments of error, the state and The Christ Hospital maintain that the probate court erred by denying their joint motion for summary judgment and by granting ACS's motion for summary judgment. We address these assignments together.
 {¶ 8} Civ.R. 56(C) provides that summary judgment is appropriate when no genuine issue of material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[3] This court's review is de novo.[4]
 {¶ 9} It is well established that, in construing a will or a trust, the "intention of the testator [at the time the document is executed] is paramount."[5] "The express language of the trust [or will] guides the court in determining the intentions of the settler [or testator]. Any words used in the trust [or will] are presumed to be used according to their common, ordinary meaning."[6]
 {¶ 10} No party argues that the language in O'Brien's will and trust was ambiguous. And we do not think that it was. Under these circumstances, The Christ Hospital maintains that it was entitled to the remainder of the will and trust, arguing that The Hospice of The Christ Hospital was still in existence because it was never a separate legal entity, but rather a d/b/a name under which the hospital provided in-home hospice services. But an entity must be licensed to use the term "hospice" to describe one of its programs.[7] It is undisputed that The Christ Hospital no longer holds such a license and, thus, can no longer conduct the activities that it had conducted under the name of The Hospice of The Christ Hospital. Accordingly, The Hospice of The Christ Hospital is "no longer in existence," as that phrase is normally understood.
 {¶ 11} Under the terms of the will and the trust, if The Hospice of The Christ Hospital was no longer in existence, then the residual estate passed to the Hamilton County unit of the ACS. The fact that O'Brien had a contingency in place evidenced her intent to leave her money to The Hospice of The Christ Hospital and not just to the hospital generally. Further, if O'Brien had wanted The Christ Hospital as the beneficiary of her estate, she would have left her estate to "The Christ Hospital for hospice services," or if she had intended for The Christ Hospital to be the contingent beneficiary, she could have said so. She did neither. Therefore, The Christ Hospital was not the proper beneficiary under O'Brien's will and trust.
 {¶ 12} The next question then is whether there was a successor to The Hospice of The Christ Hospital. HOC argues that it was the successor. We disagree.
 {¶ 13} Black's Law Dictionary defines successor as it pertains to entities as a "corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation."[8] This usually involves assuming the previous corporation's liabilities and debts. But HOC suggests that the more appropriate definition is the one that pertains to persons: "a person who succeeds to the office, rights, responsibilities, or place of another."[9] Since we are not talking about individual human beings, but different charitable entities, we use the definition of successor as it applies to corporations.
 {¶ 14} HOC maintains that it was the successor because it took over the care of former patients of The Hospice of The Christ Hospital, who had originally been referred to United Home Care, and employed former employees of The Hospice of The Christ Hospital. But this is irrelevant. What matters is whether any business interests were transferred between these entities. There were none.
 {¶ 15} At the cessation of The Hospice of The Christ Hospital, it did not transfer any of its assets or liabilities to United Home Care, but simply entered into an agreement so that its clients would have continuity of care. When United Home Care ceased its hospice program, it did not transfer assets or liabilities to HOC. Thus, at the most, HOC was simply the "successor" care provider for individual clients who were originally receiving services from The Hospice of The Christ Hospital and then United Health Care.
 {¶ 16} Because The Hospice of The Christ Hospital is no longer in existence and because HOC is not its successor, we overrule HOC's single assignment of error, as well as the first and second assignments of error of The Christ Hospital and the state.
 {¶ 17} In their third assignment of error, The Christ Hospital and the state contend that the probate court erred by admitting Beerman's affidavit, which indicated that O'Brien had intended to leave her estate to HOC. We agree, but find the error harmless. The probate court gave no weight to the affidavit because it did not address O'Brien's intent at the time she had executed the will and the trust. Accordingly, the third assignment is overruled, and the judgment of the probate court is affirmed.
Judgment affirmed.
Sundermann and Hendon, JJ., concur.
[1] See R.C. 3712.04(D).
[2] The State of Ohio ex rel. Ohio Attorney General Jim Petro was also named as a defendant because this was a charitable-trust proceeding. See R.C. 109.25.
[3] See State ex rel. Howard v. Ferreri, 70 Ohio St.3d 587,589, 1994-Ohio-130, 639 N.E.2d 1189.
[4] Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186,738 N.E.2d 1243.
[5] Toledo Trust Co. v. Santa Barbara Foundation (1987),32 Ohio St.3d 141, 143, 512 N.E.2d 664.
[6] In re Trust U/W of Brooke, 82 Ohio St.3d 553,1998-Ohio-185, 697 N.E.2d 191.
[7] See R.C. 3712.05(A).
[8] Black's Law Dictionary (7 Ed. 1999), 1446.
[9] Id.