[Cite as *May v. Lubinski*, 2013-Ohio-2173.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| JOSEPH H. MAY, et al. | C.A. No. 26528 |
|---|---|
| Appellants/Cross-Appellees | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RICHARD G. LUBINSKI, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees/Cross-Appellants | CASE No. CV 2011 01 0101 |

DECISION AND JOURNAL ENTRY

Dated: May 29, 2013

WHITMORE, Judge.

{¶1} Appellants/Cross-Appellees, Joseph May, and numerous residents of Silver Lake Estates (collectively, "the Owners"), appeal from the judgment of the Summit County Court of Common Pleas. Additionally, Appellees/Cross-Appellants, Richard Lubinski, and members of the Silver Lake Estates Board of Trustees (collectively, "the Trustees"), cross-appeal from the trial court's judgment. This Court affirms in part and reverses in part.

I

{¶2} In 1920, a trust agreement was created covering property in the Silver Lake Estates located in Summit County, Ohio. The trust agreement contains various provisions, including details about who may serve as a trustee, the duties of the trustees, and what expenses may be assessed to the property owners.

{¶3} In 2010, property owners in Silver Lake Estates received notice of a special assessment from the Trustees. The special assessment was to cover the costs of various

renovations and improvements to the trust property, the estimated cost of which, according to the Owners, totaled more than one million dollars. The proposed project was later withdrawn.

{¶4} The Trustees had spent years planning and preparing for the improvement project, but at no time sought the approval of the property owners. According to the Trustees, the trust agreement granted them the authority to make any improvements to the trust property at their discretion and to assess the property owners for such improvements. The Owners, who are a group of property owners in Silver Lake Estates, disagreed with the Trustees' interpretation of the trust agreement and filed a complaint seeking a declaratory judgment. Among other things, the Owners sought a declaration of: (1) the power of the Trustees under the trust agreement to make capital improvements and mandatory assessments for the associated costs; (2) whether expenditures made by the Trustees exceeded their authority under the trust agreement; (3) whether the Trustees breached their fiduciary duty to the Owners; and (4) whether certain trustees were qualified to serve as trustees.

{¶5} The Owners filed a motion for partial summary judgment, reserving the claims for breach of fiduciary duty and unauthorized expenditure of monies. The Trustees filed a cross motion for summary judgment on all claims. In March 2012, the trial court granted in part and denied in part the Owners' motion and denied the Trustees' cross motion for summary judgment. This judgment left the claims for breach of fiduciary duty and unauthorized expenditure of monies unresolved.

{¶6} Subsequently, the Trustees filed a "motion for clarification of the March 8, 2012 judgment entry." In June 2012, the court issued another judgment defining "extraordinary improvement" as set forth in the trust agreement and granting the Trustees' motion for summary judgment on the breach of fiduciary duty claim.

{¶7} The Owners now appeal and raise three assignments of error for our review. Additionally, the Trustees appeal and raise two assignments of error. To facilitate the analysis, we rearrange the assignments of error.

II

The Trustees' Assignment of Error Number One

THE TRIAL COURT ERRED IN REWRITING THE TRUST TO REACH A RESULT NOT INTENDED BY THE SETTLORS AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ACCORDINGLY.

{¶8} In their first assignment of error, the Trustees argue that the court erred in granting the Owners' partial motion for summary judgment based on an erroneous interpretation of the language of the trust. Specifically, the Trustees argue the plain language of the trust "provides [them] with the authority to make improvements, including the express authority to erect buildings on the Trust property."

{¶9} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). To prevail on a motion for summary judgment, the moving party must show:

> (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶10} The determination of the meaning of disputed language in a trust is a question of law. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 14. "A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent." *Id.*, quoting *Domo v. McCarthy*, 66 Ohio St.3d 312 (1993),

paragraph one of the syllabus. "Interpreting a trust is akin to interpreting a contract * * *." *Arnott* at ¶ 14. Therefore, the trust must be read as a whole to discern the intent of the settlor. *See Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, ¶ 16.

{¶11} When the language of the trust agreement is not ambiguous, "intent can be ascertained from the express terms of the trust itself." *Domo* at 314. "Any words used in the trust are presumed to be used according to their common, ordinary meaning." *In re Trust of Brooke*, 82 Ohio St.3d 553, 557 (1998).

**Prior Practices**

{¶12} The Trustees acknowledge that the language of the trust agreement is unambiguous. However, the Trustees argue that, if we were to conclude that ambiguity exists, the prior practices of the Trustees support their interpretation. The trial court found that the language of the trust agreement was unambiguous, and therefore, it did not consider extrinsic evidence in reaching its interpretation.

{¶13} "Unless the terms of a trust are found to be ambiguous, no extrinsic evidence will be admitted to interpret the trust provisions." *Robinson v. Beck*, 9th Dist. No. 21094, 2003-Ohio-1286, ¶ 10. "The mere absence of a definition * * * does not make the meaning of [a] term ambiguous. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995). A court must give undefined words their plain and ordinary meaning. *In re Trust of Brooke* at 557. "[A]mbiguity is defined as the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time." (Internal quotations and citations omitted.) *Robinson* at ¶ 25.

{¶14}   After a careful review of the trust document, we conclude that the language is not ambiguous.  As such, we will limit our review to the language of the trust document itself and will not consider the extrinsic evidence of the prior practices by the Trustees.

**Section 3**

{¶15}   The Trustees argue that the language of the trust gives them the express authority to make any improvements they deem necessary, which includes the ability to erect new buildings without the consent of the property owners.  In support of their position, the Trustees rely on the language in Section 3 of the trust, which provides:

> The trustees shall collect money from the lot owners as herein provided, and from the sums so collected, and from any other moneys coming to their hands, shall pay taxes and assessments on said lands as they become payable; shall keep the weeds and grass cut, and trees, shrubbery and flower beds on said lands in good condition; shall provide for removal of snow and ice when necessary; **shall keep the pavilion on Block "A" and any and all other buildings erected by them, stairways, private roadways and sidewalks in repair**; shall establish regulations for the use of, and provide for proper policing of private roads, lanes, parks and pavilion; and generally maintain all of said property in good order and condition for the use of lot owners in said allotment or allotments; provided that the maintenance and repair of said buildings be in the discretion of the said trustees and the said trustees shall have the power in their discretion to remove any of the said buildings, but in no event shall said trustees permit said buildings from lack of either maintenance or removal, to become unsightly objects and detrimental to the allotment.

(Emphasis added.)   The Trustees rely specifically on the section in bold as support for their express authority to erect new buildings at their discretion.

{¶16}   On the other hand, the Owners argue that this section merely requires the Trustees to maintain in good repair all buildings owned by the trust and does not grant authority to the Trustees to build new buildings.  The trial court agreed and found that, under Section 3 of the trust, the Trustees "have authority and discretion with respect to the general maintenance, repair, and upkeep of the Trust property * * * [and] are also authorized * * * to 'remove' buildings,

[however,] this section is silent with respect to erecting new buildings and/or making extraordinary improvements." We agree with the trial court's interpretation.

{¶17} Section 3 details the duties of the Trustees to maintain the property. This section does not discuss the authority of the Trustees (or of the Owners for that matter) to build new buildings. Reading the plain language of the trust, we cannot conclude that Section 3 provides any express authority to build new buildings. While the section does require the Trustees to keep all buildings "erected by them" in repair, this sentence cannot be fairly read to grant the Trustees an express authority to build new buildings at their discretion.

## Section 4

{¶18} The Trustees argue that Section 4 of the trust provides an additional method for improvements to the trust property, but does not limit the Trustees' authority granted them in Section 3 to build at their discretion.

{¶19} Section 4 permits the property owners to petition for additional improvements not undertaken by the Trustees. Section 4 provides:

> If at any time the owners of one hundred of the lots in said allotment or allotments wish for **more improvement** or embellishment of said common land, or any part of it, **than said trustees** by the terms of these regulations **are bound to make**, such lot owners may call a meeting to be held at some convenient place within the boundaries of Silver Lake Estates Allotment, of which meeting all lot owners shall have at least ten days' notice by mail or public advertisement. Should a majority of the lot owners present at such meeting decided in favor of any extraordinary improvement of such land for the common benefit, the trustees, upon receiving or being guaranteed the money necessary for that purpose, may proceed to make such improvement, which shall then be a part of the common property, and shall be cared for as herein provided.

(Emphasis added.)

{¶20}  Having concluded above that Section 3 does not grant the Trustees the authority to build buildings at their own discretion, it follows that Section 4 cannot constitute a limit upon authority derived in Section 3.  Furthermore, Section 4 does not address the authority of the Trustees to build new buildings at their discretion.

{¶21}  The plain language of Section 4 permits property owners to petition for improvements to the trust property.  Once the property owners have properly petitioned and approved the proposed "extraordinary improvement," and the Trustees have either received or been promised the necessary funds, the Trustees "may proceed to make such improvement."  If, for example, the petitioned improvement involved the building of a new building, it would qualify as a building erected by the Trustees and, in accordance with Section 3, would have to be kept in repair.

**Assessments**

{¶22}  The Trustees further argue that the language contained in the Assessments section of the trust agreement supports their interpretation of the trust.  The Assessments section provides:

> The cost of all ordinary care of the lands and buildings in the hands of the trustees, and the taxes and assessments on the said lands and buildings and the necessary expense of the said trustees in carrying out their duties and in maintaining and preserving the property described in this Trust Deed and any buildings located thereon shall be charged by the said trustees to the several lot owners * * *.  Any extraordinary expenses for improvement of the property shall be met by voluntary subscription.
>
> The ordinary expenses for which the trustees may charge to said lot owners as above provided, shall include those expenses which are **necessary for the maintenance and improvement of the property** described in this deed, for the common use of said lot owners as herein provided.  The said charges, expenses, taxes and assessments shall be assessed by the said trustees in each year at such time as may be determined by said trustees, and said assessments shall be based on the tax value of each lot for the year in which said assessment is made, and

said assessments shall constitute a lien on the land against which said assessment is made, as herein provided.

(Emphasis added.)

{¶23} The Trustees argue that the Assessments section "expressly allows the Trustees to assess the lot owners, not just for maintenance and repair, but also for improvements made by the Trustees in their discretion * * *."

{¶24} The Assessments section does permit the Trustees to collect expenses necessary for the maintenance and improvement of the property. However, the Trustees read the term "improvement" too broadly. Reading this section in conjunction with the plain language of Section 3, the authority of the Trustees to make improvements to the property is limited. For example, the Trustees have the authority to remove a building at their discretion. This is a permissible "improvement" and the cost of such may be assessed to the property owners.[1] The language in the Assessments section cannot be read to expand the authority granted the Trustees to make improvements detailed in Section 3. The Assessments section does not support the Trustees' position that they have authority to build new buildings at their discretion.

**Extraordinary Improvements**

{¶25} Lastly, the Trustees argue that the trial court erred when it defined "extraordinary improvement" and in so doing erroneously limited their authority to erect new buildings at their discretion.

---

[1] Notably, the reference to the removal of buildings is contained within the provision requiring their maintenance. The provision sets forth a prohibition that the trustees may not permit any building from lack of maintenance or removal to become unsightly or detrimental to the allotment. Read in context, the provision granting discretion to remove a structure relates to the duty to maintain the property.

{¶26} The trial court found that any "extraordinary" improvements must be petitioned for by the property owners under Section 4. The court defined an extraordinary improvement as "more than a mere repair or replacement – i.e., more than the mere replacement of an existing roof, deck, dock, or parking lot. An extraordinary improvement is one that enhances the Trust Property's value or utility or adapts it to a new or additional purpose."

{¶27} According to the Trustees, the "extraordinary improvement" label merely defines the way the improvement was sought (i.e., by petition) and should not be read to limit their authority on what kinds of improvements they are authorized to make under Section 3.

{¶28} The Trustees' argument relies on the premise that Section 3 grants them the authority to make whatever improvements they decide. However, as discussed above, the Trustees' reading of their authority under Section 3 is too broad. Section 3 limits the authority of the Trustees "to the general maintenance, repair, and upkeep of the Trust property[,]" including the authority to remove buildings in furtherance of the duty to maintain and repair the property. The plain language of the trust does not support the reading that the Trustees have the authority to build new buildings at their discretion.

{¶29} The trial court's definition of extraordinary improvement is consistent with the plain, ordinary meaning of the terms "extraordinary" and "improvement." The extraordinary improvement definition applies to Section 4 of the trust agreement. Therefore, any improvement to the trust property that is beyond the ordinary repair, ordinary maintenance, or removal of a building is an "extraordinary improvement" and must be brought by petition under Section 4 of the trust agreement.

**Summary Judgment**

{¶30} Having concluded that the trial court correctly interpreted the language of the trust agreement, we cannot conclude that the court erred in granting the Owners' partial motion for summary judgment. *See Temple*, 50 Ohio St.2d at 327. Therefore, the Trustees' first assignment of error is overruled.

The Owners' Assignment of Error Number One

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO APPELLEES/CROSS APPELLANTS ON THE APPELLANT/CROSS APPELLEE'S [Sic] CLAIM FOR BREACH OF FIDUCIARY DUTY.

The Owners' Assignment of Error Number Two

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ADDRESS THE REQUEST FOR DECLARATORY JUDGMENT WHICH REQUESTED A DETERMINATION THAT THE TRUSTEES['] EXPENDITURES HAD EXCEEDED THEIR AUTHORITY UNDER THE TRUST.

{¶31} In their first assignment of error, the Owners argue that the court erred when it found there was no evidence of a breach of fiduciary duty because the Owners did not prove that the Trustees either acted in bad faith or abused their discretion in interpreting the trust agreement. The issue of bad faith or reasonable reliance on the language of the trust, according to the Owners, is not determinative of whether or not there was a breach of fiduciary duty. Instead, it goes to what equitable remedy the court should impose. Additionally, in their second assignment of error, the Owners argue that the court erred when it did not rule on whether the expenditures made by the Trustees were outside the scope of their authority.

{¶32} We incorporate the standard of review for summary judgment set forth in the Trustees' first assignment of error. *See Grafton*, 77 Ohio St.3d at 105; *Temple*, 50 Ohio St.2d at 327. "In order to prevail on a claim for breach of breach of fiduciary duty, a plaintiff must show

the existence of a duty that arose from a fiduciary relationship, a breach of that duty, and an injury proximately resulting from the breach of duty." *Rothschild v. Eckstein*, 9th Dist. No. 09CA009733, 2010-Ohio-4285, ¶ 24.

**{¶33}** It is undisputed that the Trustees have a fiduciary relationship with the Owners. *See Wayne Sav. Community Bank v. Gardner*, 9th Dist. No. 08CA0016, 2008-Ohio-5926, ¶ 14 ("A trustee owes a fiduciary duty to the beneficiaries of the trust that he has been chosen to administer.").

**{¶34}** The Owners alleged that the Trustees breached their fiduciary duty when they acted outside the authority granted to them in the trust agreement. Specifically, the Owners alleged that the Trustees acted outside the scope of their authority when they spent funds for "capital improvements." To support their claim, Joseph May, one of the Silver Lake Estates property owners, submitted an affidavit which incorporated annual budgeting documents obtained from the Trustees showing expenses for "capital improvements."

**{¶35}** In their response, the Trustees did not dispute that funds were spent for capital improvements. Instead, they argued that the trust agreement grants them the discretion to make improvements to the property beyond that of ordinary maintenance and repair and that they "have always acted in good faith in their reasonable use of discretion as Trustees."

**{¶36}** R.C. 5808.01 requires a trustee to "administer the trust in good faith, *in accordance with its terms* and purposes and the interests of the beneficiaries * * *." (Emphasis added.) The record here does not contain details about what expenses made up the "capital improvements" line item in the trust's budget. However, because we have determined that the trust agreement does not grant the Trustees the authority make improvements beyond general maintenance and repair, we conclude a genuine issue of material fact exists as to whether the

"capital improvements" expenditures were outside the scope of the Trustees' authority and a breach of their fiduciary duty. *See generally Stevens v. National City Bank*, 45 Ohio St.3d 276 (1989) (discretion of a trustee may be limited by the terms of the trust).

{¶37} The Trustees argue that the Owners have waived this issue on appeal because they failed to request a continuance pursuant to Civ.R. 56(F) for more discovery. Because we have concluded a genuine issue of material fact exists, summary judgment was not appropriate and the Owners were not required to seek a continuance under Civ.R. 56(F).

{¶38} A genuine issue of material fact exists as to whether the "capital improvements" expenditures made by the Trustees were outside the scope of the Trustees' authority and a breach of their fiduciary duty. Therefore, the trial court erred in granting the Trustees' motion for summary judgment on the Owners' breach of fiduciary duty claim. The Owners' first assignment of error is sustained.

{¶39} Because we have concluded that summary judgment was not appropriate for the breach of fiduciary duty claim, the Owners' second assignment of error is not yet ripe for review and we decline to address it.

<u>The Owners' Assignment of Error Number Three</u>

THE TRIAL COURT ERRED IN CONCLUDING THAT TRUSTEE GEORGE W. DAVERIO, JR. WAS NOT DISQUALIFIED AS A TRUSTEE DUE TO THE TRANSFER OF THE DEED BACK INTO HIS OWN NAME FROM HIS REVOCABLE TRUST.

{¶40} In their third assignment of error, the Owners argue that "[t]he trial court erred in determining that George W. Daverio Jr.'s reconveyance of the property into his individual name in 2012 cured the automatic disqualification from 2005 and reinstated him as Trustee * * *."

**{¶41}** We incorporate the standard of review for summary judgment set forth in the Trustees' first assignment of error. *See Grafton*, 77 Ohio St.3d at 105; *Temple*, 50 Ohio St.2d at 327.

**{¶42}** The relevant provisions of the trust are as follows:

> The trustees * * * shall at all times be owners of land and residents in the said Silver Lake Estates Allotment * * *. If at any time any trustee * * * shall cease to be an owner of land or resident * * *, his position as trustee shall at once become vacant and a successor shall be chosen as herein provided. When the position of any trustee is vacated by resignation, disability or death, the remaining trustees shall at once choose a successor. The fact of such vacancy and choice of successor shall be evidenced in writing, signed and acknowledged by a majority of the remaining trustees and recorded in the office of the County Recorder of Summit County, Ohio, whereupon the new trustee shall succeed to all the title, right and obligations of his predecessor.

**{¶43}** The parties do not dispute that Daverio has satisfied the residency requirement to serve as a trustee. Instead, the parties limit their arguments to the issue of whether Daverio's conveyance of his personal residence into a revocable residence trust terminated his ownership interest thereby immediately disqualifying him from serving as a trustee.

**{¶44}** The Trustees argue that any defect has been cured because Daverio has since conveyed the property back into his individual name. However, the language of the trust agreement provides that if a trustee ceases to be an owner "his position as trustee *shall at once become vacant.*" (Emphasis added.) Once the trustee position is vacant, the trust agreement details the steps required to appoint someone to the vacant position. Therefore, if a trustee is disqualified the trustee position becomes immediately vacant and any later cure of the disqualification will not automatically put the trustee back into his position. The trustee, however, may be eligible for reappointment to the vacant position.

**{¶45}** To the extent that the trial court found that Daverio's reconveyance of his property back into his individual name automatically placed Daverio back into his position as trustee, the trial court erred.

**{¶46}** "Trust law is based on the concept of separate ownership of equitable and legal interests." *Hatch v. Lallo*, 9th Dist. No. 20642, 2002 WL 462862, *2 (Mar. 27, 2002). In a trust, the trustee holds legal title to trust property, while the beneficiary holds equitable title. *Goralsky v. Taylor*, 59 Ohio St.3d 197, 198 (1991).

**{¶47}** The Trustees argue that Daverio continued to be the owner of the property after the transfer into his revocable residence trust because as the trustee he held legal title to the property and retained ownership interest. The Owners argue that Daverio ceased being the owner of the property when he transferred his interest to himself as trustee.

**{¶48}** However, we do not reach this issue because there is a material dispute of fact as to Daverio's ownership interest in the property prior to 2005. The Trustees assert that Daverio is the sole trustee and sole beneficiary of his residential trust. However, the record contains no information about Daverio's trust. Daverio's affidavit merely states that the property was transferred to his trust in 2005 for estate planning purposes.

**{¶49}** The parties also assert that in 2005 George Daverio Jr. deeded his personal residence to the George W. Daverio, Jr. Revocable Residence Trust. However, the document attached to the Owners' partial motion for summary judgment reflects that a T. Mark Daverio, Trustee of the Joanne J. Daverio Trust actually transferred the property to George W. Daverio, Jr. as Trustee of the George W. Daverio, Jr. Revocable Residence Trust in 2005. There is no information in the record regarding George Daverio's interest in the Joanne J. Daverio Trust, if any.

{¶50} Because the record is unclear as to whether Daverio had an ownership interest in the property prior to 2005 and because the record is silent on the terms of Daverio's revocable residential trust, a material question of fact remains. The trial court erred in granting summary judgment on the issue of whether Daverio is qualified to serve as a trustee. The Owners' third assignment of error is sustained, and the matter is remanded for further proceedings.

The Trustees' Assignment of Error Number Two

THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT IN DISQUALIFYING RICHARD LUBINSKI AND DAVID HUNTER AS TRUSTEES.

{¶51} In their second assignment of error, the Trustees argue that the trial court erred in finding Lubinski and Hunter were not qualified to serve as trustees.

{¶52} We incorporate the standard of review for summary judgment set forth in the Trustees' first assignment of error. *See Grafton*, 77 Ohio St.3d at 105; *Temple*, 50 Ohio St.2d at 327.

**Lubinski**

{¶53} The Trustees first argue that the trial court erred when it granted summary judgment disqualifying Lubinski as a trustee because the Owners did not timely raise this issue. The Owners admit that Lubinski's qualifications were not challenged in their motion for partial summary judgment and the issue was first raised in their reply brief. The Owners argue, however, that this is not a reversible error. Under the facts of this case, we agree.

{¶54} "Typically, a reply brief should not set forth new arguments. Allowing new arguments in a reply brief denies respondents the meaningful opportunity to respond." *Smith v. Ray Esser & Sons, Inc.*, 9th Dist. No. 10CA009798, 2011-Ohio-1529, ¶ 15. In *Smith*, we concluded that the trial court's granting of summary judgment on the day after a new argument

was raised by Esser in its reply brief denied Smith a meaningful opportunity to respond. *Id*. at ¶ 16.

**{¶55}** Here, the Owners filed a partial motion for summary judgment in May 2011, in which they challenged the qualifications of George W. Daverio Jr. and David Hunter to serve as trustees. On August 3, 2011, the Trustees filed a memorandum in opposition to the Owners' motion for summary judgment and a cross motion for summary judgment. On August 29, 2011, the Owners then filed a reply, in which they argued, for the first time, that Lubinski's appointment as trustee was never recorded with the Summit County Recorder's Office as required by the trust agreement. The Owners argue that the defect was only discovered when they attempted to verify the affidavit of Lubinski filed in connection with the Trustees' cross motion for summary judgment. On September 12, 2011, the Trustees filed a reply brief in which they objected to the challenge to Lubinski's appointment. The Trustees did not argue the merits, but instead argued that the Owners could not raise a new argument in their reply brief. On March 8, 2012, almost six months after the Trustees' reply, the court entered judgment finding Lubinski's appointment was not valid because it had not been recorded.

**{¶56}** We conclude that it was error for the trial court to not recognize that the Owners had raised a new argument in their reply brief and to not provide the Trustees with an opportunity to brief the merits of the issue. However, under the facts of this case, we conclude that the error was harmless. The Trustees do not dispute that Lubinski's appointment was not properly recorded.

**{¶57}** After the trial court's judgment entry declaring that Lubinski was never properly appointed as trustee, the Trustees recorded his appointment with the recorder's office. The Trustees then filed a motion requesting the trial court vacate the portion of its entry declaring

Lubinski's appointment invalid. The trial court found that "[e]ven though Mr. Lubinski may now be a properly appointed Trustee, the March 29, 2012 filing does not rectify the fact that there was not a prior proper appointment."

{¶58} The Trustees argue that the court erred in concluding Lubinski's position was vacant even after his appointment was recorded with the Summit County Recorder's Office.

{¶59} The trust requires that a "choice of successor [trustee] shall be evidenced in writing, signed and acknowledged by a majority of the remaining trustees and recorded in the office of the County Recorder of Summit County, Ohio, whereupon the new trustee shall succeed to all the title, right and obligations of his predecessor."

{¶60} The Trustees recorded the written minutes from a 1986 trustee meeting where Lubinski was unanimously approved for a voting trustee position. Also recorded was an affidavit signed by a majority of the members of the 1986 Board of Trustees and acknowledging Lubinski's appointment as trustee. Because Lubinski's appointment was evidenced in writing, signed and acknowledged by a majority of the remaining trustees, and his appointment was properly recorded on March 29, 2012, the trial court erred in finding his appointment was not valid. To the extent that the trial court held that Lubinski's appointment was invalid after it was properly recorded, it is reversed.

{¶61} The question then remains as to the date on which Lubinski's appointment became effective. In light of our decision to remand the case for further proceedings, we decline to address this issue in the first instance. *See Harris-Coker v. Abraham*, 9th Dist. No. 26053, 2012-Ohio-4135, ¶ 4 ("[T]his Court remains a reviewing court."). The Trustees' second assignment of error as it relates to Lubinski is sustained.

**Hunter**

{¶62} The Trustees also argue that the trial court erred in finding David Hunter was not qualified to serve as a trustee. Specifically, the Trustees allege that the trial court erred in finding that Hunter's dower interest in his residence did not satisfy the trust agreement's ownership requirement for him to serve as a trustee. The Owners argue that the term "owner" in the trust agreement requires more than a "contingent inchoate right."

{¶63} The trust agreement requires that all trustees be "owners of land and residents in * * * Silver Lake Estates." The trust agreement does not define the term "owner." Accordingly, we look to the ordinary, common meaning of the term. *In re Trust of Brooke*, 82 Ohio St.3d at 557. Owner is defined as "[o]ne who has the right to possess, use, and convey something." *Black's Law Dictionary* 1137 (8th Ed.2004). "In the context of real property, [the Ohio Supreme Court] ha[s] consistently held that the plain and ordinary meaning of 'owner' is the holder of legal title." *Performing Arts School of Metro. Toledo, Inc. v. Wilkins*, 104 Ohio St.3d 284, 2004-Ohio-6389, ¶ 14.

{¶64} While Hunter does have an interest in the property, his interest is not that of an owner as intended by the trust agreement. Hunter does not hold legal title to the property. Hunter's inchoate dower interest does not grant him the right to possess or use the property. *See Cieslikowski v. Radecki*, 100 Ohio App. 46, 46 (6th Dist.1956). He cannot convey the property. *See In re Lingafelter*, 181 F. 24, 26 (6th Cir.1910). Using the plain and ordinary meaning of the term "owner," we conclude Hunter's inchoate dower interest does not satisfy the ownership requirement to make him eligible to serve as trustee. The Trustees' second assignment of error as it relates to Hunter is overruled.

III

{¶65} The Owners' first and third assignments of error are sustained. Their second assignment of error is not yet ripe for review, and we decline to address it. The Trustees' first assignment of error is overruled. The Trustees' second assignment of error as it relates to Hunter is overruled, and their second assignment of error as it relates to Lubinski is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.,
HENSAL, J.
CONCUR.

APPEARANCES:

KENNETH L. GIBSON, Attorney at Law, for Appellants/Cross-Appellees.

RUSSELL J. KUTRELL and BONNIE WOLF, Attorneys at Law, for Appellees/Cross-Appellants.

JACK MORRISON, JR. and THOMAS R. HOULIHAN, Attorneys at Law, for Appellees/Cross-Appelants.