[Cite as *Massie v. Stamp*, 2025-Ohio-1133.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

RICK MASSIE, et al.

    Appellees

    v.

JOHN STAMP, et al.

    Appellants

C.A. No.     23AP0042

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2022 CVC-H 000203

DECISION AND JOURNAL ENTRY

Dated: March 31, 2025

FLAGG LANZINGER, Judge.

**{¶1}** Appellants appeal the decision of the Wayne County Court of Common granting summary judgment in favor of Appellees. For the reasons that follow, we reverse and remand this matter for proceedings consistent with this decision.

I.

**{¶2}** This case involves a dispute over the interpretation of a trust established by Roy Massie and Barbara Stamp. Roy and Barbara were married in 1986. Both Roy and Barbara had children from previous marriages. Roy and Barbara have no children together.

**{¶3}** In 2001, Roy and Barbara created The Roy C. Massie and Barbara E. Massie Joint Revocable Trust UAD 3/14/2001 ("Trust"). The Trust named Roy and Barbara as co-trustees and as primary beneficiaries of the Trust. The Trust named Roy's four children and Barbara's three children as contingent beneficiaries. The Trust named Rick Massie (Roy's son) and John Stamp (Barbara's son) as successor co-trustees.

{¶4}   Roy died on September 10, 2014. Shortly after Roy died, Barbara amended the Trust. Barbara removed Roy's children as contingent beneficiaries of the Trust and replaced Rick Massie with William Stamp (Barbara's son) as successor co-trustee. Barbara Massie died on November 2, 2021.

{¶5}   On May 20, 2022, Roy's children filed a civil complaint seeking declaratory judgments regarding the interpretation and administration of the Trust. The complaint alleged that the plain language of the trust made Rick Massie (Roy's son) and John Stamp (Barbara's son) successor co-trustees upon the death of Roy. The complaint alleged that Barbara had no power to unilaterally amend the Trust after Roy's death. The complaint further alleged that even if Barbara remained as sole original trustee, the plain language of the Trust created a separate Credit Shelter Trust upon Roy's death. The complaint alleged that all Trust assets were transferred to that Credit Shelter Trust upon its creation and Barbara had no authority to amend the Credit Shelter Trust or otherwise affect its assets. Appellants filed an answer.

{¶6}   The parties filed competing summary judgment motions. John Stamp and his siblings (Barbara's children) argued that the Trust's plain language made Barbara sole trustee upon Roy's death. They further asserted that as sole trustee, her amendment to the Trust was permissible. Rick Massie and his siblings (Roy's children) argued the plain language of the Trust created a new Credit Shelter Trust upon Roy's death making Rick Massie and John Stamp trustees. Appellees filed a response to Appellants' motion, however, Appellants did not respond to Appellees' motion for summary judgment.

{¶7}   The trial court granted summary judgment in favor of Appellees and denied Appellants' motion. The trial court concluded that the plain language of the Trust created a Credit Shelter Trust upon Roy's death precluding Barbara from becoming trustee. In reaching its

conclusion, the trial court stated that provisions making her the sole trustee upon Roy's death and other discretionary language were drafting errors. Appellants now appeal raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND CONCLUDING THAT UPON THE DEATH OF ROY C. MASSIE, RICK MASSIE AND JOHN STAMP BECAME CO-TRUSTEES OF THE TRUST.**

**{¶8}** In their first assignment of error, Appellants argue that the trial court erred in granting the Appellees' motion for summary judgment by erroneously interpreting the Trust document. Specifically, Appellants argue that the plain language of the Trust dictates that upon Roy Massie's death, Barbara Massie became the sole Trustee with authority to amend the Trust. We agree.

**{¶9}** We review a trial court's award of summary judgment de novo. *May v. Lubinski*, 2013-Ohio-2173, ¶ 9 (9th Dist.). Under Civil Rule 56(C), summary judgment is appropriate if:

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of pointing to evidentiary materials that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E).

**{¶10}** The interpretation of disputed language in a trust is a question of law. *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 14. "A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent." *Id.*, quoting *Domo v. McCarthy*, 66 Ohio St.3d 312 (1993), paragraph one of the syllabus. "[T]he trust must be read as a whole to discern the intent of the settlor." *May* at ¶ 10, citing *Saunders v. Mortensen*, 2004-Ohio-24, ¶ 16. If the intent of the parties can be determined from the plain language of the document, then there is no need to interpret the trust. *Saunders* at ¶ 9.

**{¶11}** "Any words used in the trust are presumed to be used according to their common, ordinary meaning." *May* at ¶ 11, quoting *In re Trust of Brooke*, 82 Ohio St.3d 553, 557 (1998). "Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16. If the trust is ambiguous, determining the settlor's intent becomes a question of fact. *Tera, LLC v. Rice Drilling D, LLC*, 2023-Ohio-273, ¶ 44 (7th Dist.).

**{¶12}** The Trust language at issue states:

**ARTICLE FOUR**

**A. APPOINTMENT OF SUCCESSOR TRUSTEE**

**1. Original and Surviving Trustee(s)**

The original Co-Trustees under this Trust Agreement shall be ROY C. MASSIE and BARBARA E. MASSIE, to serve with all the obligation, powers, and authority contained within this Trust Agreement and, in the event of the death of ROY C. MASSIE, or if for any reason whatsoever he ceases to serve as Co-Trustee hereunder, the Grantors nominate and appoint BARBARA E. MASSIE to serve as Trustee hereunder without the approval of any court. In the event of the death of BARBARA E. MASSIE, or if for any reason whatsoever she ceases to serve as Co-Trustee hereunder, the Grantors nominate and appoint ROY C. MASSIE to serve as Trustee hereunder without the approval of any court.

## 2. Successor Trustee

> Upon the death of the original Trustee(s), or if for any reason whatsoever they cease to serve as Trustee(s) hereunder, the Grantors nominate and appoint their sons, JOHN STAMP and RICK MASSIE, to serve as Co-Trustees hereunder, without the approval of the court. If JOHN STAMP is unable or unwilling to serve, or to continue to serve for any reason whatsoever, then and in that event the Grantors nominate and appoint BARBARA BRUNET to serve as Co-Trustee hereunder, without the approval of any court. If RICK MASSIE is unable or unwilling to serve, or to continue to serve for any reason whatsoever, then and in that event the Grantors nominate and appoint RANDY MASSIE to serve as Co-Trustee hereunder, without the approval of any court.

{¶13} This Court holds that the plain language of the Trust unambiguously made Barbara the sole trustee upon Roy's death. Article 4(A)(1) of the Trust expressly states, "in the event of the death of ROY C. MASSIE . . . the Grantors nominate and appoint BARBARA E. MASSIE to serve as Trustee . . . ." While the Trust does provide for the appointment of successor co-trustees in Article 4(A)(2), that provision follows Article 4(A)(1), which refers to the original and surviving trustees. Article 4(A)(2) is only triggered "[u]pon the death of the original Trustee(s), or if for any reason whatsoever they cease to serve as Trustee(s) hereunder . . . ." According to the Trust, Barbara continued to serve as Trustee after Roy's death and the condition for appointing successor co-trustees was not met at that time of Roy's death.

{¶14} Courts are obligated to enforce the terms of a trust as written, regardless of the perceived fairness of the outcome. *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 2015-Ohio-3716, ¶ 37. A trust does not become ambiguous simply because its operation may work a hardship on one of the parties. *Id.* at ¶ 37, quoting *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362 (1997). In the absence of fraud or other unlawful conduct, courts must enforce the terms of the trust as written, regardless of the outcome for the beneficiaries. *Dugan & Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs.*, 2007-Ohio-1687, ¶ 29.

{¶15} The language of the Trust is unambiguous. The Trust's plain language dictated that Barbara was the sole trustee upon Roy's death. As sole trustee, she was authorized to amend the Trust.

{¶16} Appellants' first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES AND CONCLUDING THAT THE CREDIT SHELTER TRUST WAS MANDATORY AND, IN ADDITION, THAT IT WAS NECESSARY UNDER THE CURRENT TAX LAWS OF THE STATE OF OHIO AND UNDER FEDERAL LAW.**

{¶17} In their second assignment of error, Appellants argue that the trial court erred in granting summary judgment to Appellees by finding the Trust required creation of a Credit Shelter Trust upon the first grantor's death. Appellants assert the Trust's terms make this creation discretionary. We agree.

{¶18} As previously stated, we review a trial court's grant of summary judgment de novo. *May*, 2013-Ohio-2173, at ¶ 9 (9th Dist.). Summary judgment is appropriate under Civ.R. 56(C) when there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion adverse to the non-moving party. *Temple*, 50 Ohio St.2d at 327.

{¶19} As noted in our analysis of the first assignment of error, the interpretation of a trust is a question of law aimed at ascertaining and effectuating the settlor's intent. *Arnott*, 2012-Ohio-3208, at ¶ 14. A trust must be read as a whole to discern this intent. *May* at ¶ 10. When the trust's language is clear and unambiguous, intent is derived from the express terms of the trust. *Id.* at ¶ 11. Words in a trust are presumed to carry their common, ordinary meaning. *Id.*

{¶20} The primary issue for this assignment of error is whether the Trust's terms require the mandatory creation of a Credit Shelter Trust or whether its establishment is discretionary. Appellants argue that the Trust uses permissive language ("may"), indicating that establishing the Credit Shelter Trust is optional and at the trustee's discretion. In contrast, Appellees argues that interpreting the creation of a Credit Shelter Trust as discretionary defeats the Trust's intended purpose of minimizing estate taxes. Specifically, Appellees assert that under the Internal Revenue Code, the surviving spouse must not retain any power to amend or revoke the Credit Shelter Trust for it to be effective in reducing estate taxes. Appellees assert that if the creation of the Credit Shelter Trust is optional, by law it cannot be used to reduce tax liability, and such an interpretation of the Trust would render large portions of the Trust document inoperable.

{¶21} Article 2, Section (A)(2)(a) of the Trust states, in relevant part:

Upon the death of the first to die of the Grantors, **the Trustee may establish a separate fund to be known as the Credit Shelter Trust**; this trust shall from time to time be referred to as "Trust B." The Trustee shall fund Trust B with the largest pecuniary amount which will not result in or increase the Federal estate tax payable upon the death of the second to die of the Grantors; however, the amount funding this Trust B shall in no event exceed the largest amount which passes free from the Federal estate tax on the death of the first to die of the Grantors by reason of the unified credit and state death tax credit.

(Emphasis added.)

{¶22} Generally, the term "may" is construed as permissive, granting discretion. *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 107 (1971); *see also In re S.H.*, 2013-Ohio-3708, ¶ 37 (9th Dist.); *Sovereign Empire, LLC v. Akron*, 2023-Ohio-201, ¶ 12 (9th Dist.). Only in rare instances will "may" be interpreted as mandatory, and such an interpretation requires clear evidence of ambiguity or an intent to impose an obligation. *See Dorrian* at paragraph one of the syllabus ("In statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative

intent that they receive a construction other than their ordinary usage.").

{¶23} Here, the plain language of the Trust grants the Trustee discretion to decide whether to create a Credit Shelter Trust. Subsequent uses of "shall" impose mandatory obligations only if the Trustee first elects to proceed under the permissive "may." The settlors' use of both "may" and "shall" within the same paragraph plainly reflects that the two terms carry their ordinary and distinct meanings—"may" as permissive and "shall" as mandatory.

{¶24} Notwithstanding the plain language of the Trust, the trial court determined that the word "may" in Article 2, Section (A)(2)(a) was a drafting error. The trial court explained that "[i]t is clear to this Court that the intent of the settlors was to utilize the protections of a Credit Shelter Trust. This is evidenced in the other sections of the Trust that rely upon the creation of a Credit Shelter Trust for those sections to be executed." The trial court's determination in this regard ignored the plain language of the Trust and effectively re-wrote the Trust to achieve what the court considered a more equitable result. But as the Ohio Supreme Court has explained, "[i]t is not the responsibility or function of [a] court to rewrite the parties' contract in order to provide for a more equitable result." *Hope Academy Broadway Campus*, 2015-Ohio-3716, at ¶ 37, quoting *Foster Wheeler Enviresponse, Inc.*, 78 Ohio St.3d at 362.

{¶25} Additionally, any reliance upon the settlors' intent in this regard would have necessarily required the trial court to ignore the plain and ordinary meaning of "may" and find the Trust's use of "may" ambiguous. *See Envision Waste Servs., LLC v. Cty. of Medina*, 2017-Ohio-351, ¶ 15 (9th Dist.). Yet the language in Article 2, Section (A)(2)(a) of the Trust is not ambiguous. Even if it was, ascertaining the settlors' intent to resolve any ambiguity in the Trust is for the trier of fact, not the trial court at the summary judgment stage. *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 12; *Spitzer Autoworld Akron, LLC v. Fred Martin Motor Co.*, 2024-Ohio-3394,

¶ 53 (9th Dist.).

**{¶26}** In light of the foregoing, the trial court erred in granting summary judgment to Appellees by finding the Trust required creation of a Credit Shelter Trust upon the first grantor's death. Appellants' second assignment of error is sustained.

III.

**{¶27}** Appellants' assignments of error are sustained. The judgment of the Wayne County Court of Common Pleas is reversed, and the matter is remanded for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

**{¶28}** I agree with the opinion of this Court that the trial court declared, as a matter of law, that the plain language of the trust created a credit shelter trust and that it erred when it did so. I would reverse and remand solely on those grounds.

STEVENSON, P. J.
<u>CONCURRING IN PART, AND DISSENTING IN PART.</u>

**{¶29}** I concur with this Court's opinion regarding the first assignment of error but respectfully dissent to this Court's decision on the second assignment of error.

**{¶30}** In reviewing Appellant's second assignment of error, I agree with the majority's citation of Ohio law, but not with the application. The majority notes that our "'purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent.'" *Arnott,* 2012-Ohio-3208, at ¶ 14, quoting *Domo v. McCarthy,* 66 Ohio St.3d 312 (1993), paragraph one of the syllabus. While interpreting a trust, courts must read the trust as a whole to discern the intent of the settlor. *May*, 2013-Ohio-2173, at ¶ 10 (9th Dist.), citing *Saunders*, 2004-Ohio-24, at ¶ 16.

**{¶31}** In reaching its decision, the majority primarily focuses on the use of the term "may" in the first sentence of Article 2, Section (A)(2)(a) of the Trust and does not focus on the whole of the Trust.

**{¶32}** Article 2, Section (A)(2)(a) of the Trust states, in relevant part:

Upon the death of the first to die of the Grantors, the Trustee **may** establish a separate fund to be known as the Credit Shelter Trust; this trust **shall** from time to time be referred to as "Trust B." The Trustee **shall** fund Trust B with the largest pecuniary amount which will not result in or increase the Federal estate tax payable

> upon the death of the second to die of the Grantors; however, the amount funding this Trust B shall in no event exceed the largest amount which passes free from the Federal estate tax on the death of the first to die of the Grantors by reason of the unified credit and state death tax credit.

(Emphasis added.)

{¶33} In reading this section as a whole, it is clear that the settlor used both "may" and "shall" in the same section. It is difficult to give this whole section meaning if the court focuses on the first sentence exclusively and ignores the remaining part of the section that uses "shall." Further, the construction of this section is similar to a preceding section that initially uses "may," but then switches to "shall" to describe the Trustee's duties. Article 1, Section (A)(1) provides in relevant part:

> Death Taxes and Expenses
>
> After the death of either of us, the Trustee **may** pay to the executor or Administrator of that estate such amounts of the trust principal held at death as such Executor or Administrator deems necessary or advisable to pay any part or all of the debts, claims, costs, expenses, and cash bequests of the estate, and the death taxes, including interest and penalties thereon, if any, payable by reason of death. The Trustee **shall** not question any amounts so requested or see to their application or seek reimbursement.

(Emphasis added.)

{¶34} Again, the Trust uses the same construction of first using "may" to define the Trustee's duties and then transitions to "shall."  I would find that in reading the Trust as a whole document in these sections, the use of "may" recognizes that the events in question either will or will not happen, not that the Trustee is vested with discretion to create a credit shelter trust or pay an estate claim. Thus, in reading the whole Trust, the use of "may" signifies that there may be estate claims or a need for a credit shelter trust, not that the Trustee had discretion to ignore estate claims or the requirement of a credit shelter trust.

**{¶35}** More importantly, in my view, the Trust fails in its stated purpose to create a credit shelter trust if the Trustee has discretion to create a credit shelter trust. If the Trust is interpreted to permit Barbara to have discretionary power to fund the credit shelter trust, there is no dispute that she would have a general power of appointment and Federal tax law would not recognize a credit shelter trust. By interpreting the one use of "may" to give full discretion to Barbara to determine whether to fund the credit shelter trust, the majority renders entire pages of the Trust superfluous as there never could have been a credit shelter trust if she has that discretion. The only way to harmonize and give effect to all the provisions of the Trust is to interpret the Trust as requiring Barbara to create a credit shelter trust upon the death of her Husband. Because we are required to read the Trust as a whole to determine the intent of the parties, I cannot focus my review of the Trust on one word to the exclusion of the rest of the document. Thus, I would find the trial court correctly found there is no genuine issue of material fact or question of law and the intent of the settlors of the Trust was to utilize the protections of a credit shelter trust.

**{¶36}** Further, words used in the trust are presumed to be used according to their common, ordinary meaning. *In re Trust of Brooke*, 82 Ohio St.3d 553, 557 (1998). "May" is generally construed as permissive or granting discretion when interpreting statues as the majority notes, citing in support *Dorrian*, 27 Ohio St.2d at 107, *In re S.H.*, 2013-Ohio-3708, at ¶ 37 (9th Dist.)*, and *Sovereign Empire, LLC.*, 2023-Ohio-201, at ¶ 12 (9th Dist.). However, a general construction can give way when the language of a provision or policy of a statutory provision does not support that general construction in a statute. *Dorrian* at 107, citing *State ex rel. John Tague Post, v. Klinger*, 114 Ohio St. 212 (1926). To the extent the majority wishes to adopt rules of statutory construction to this Trust, I would find the language of the Trust and the settlors' intent does not support the general use of "may." As stated previously, I find the alternate use of "may" and

"shall" in the same paragraphs, the intent expressed in the whole of the Trust rather than an isolated word, and the incompatibility of a credit shelter trust with a discretionary power of appointment requires a finding that "may" not be given its usual definition in this Trust.

{¶37} Accordingly, I would concur with the majority's opinion as to the first assignment of error but respectfully dissent to the majority's opinion as to the second assignment of error.

APPEARANCES:

ROBERT W. ECKINGER and STEPHEN ECKINGER, Attorneys at Law, for Appellants.

ANDREW P. LYCANS, Attorney at Law, for Appellees.